## Richmond

### FRANCES MINNICK CARTER v. EDWIN R. CARTER, III.

January 20, 1975.

Record No. 740381.

Present, All the Justices.

*John C. Lowe (F. Guthrie Gordon, III; Lowe & Gordon,* on brief), for appellant.

*Robert P. Boyle (Boyle & Wood,* on brief), for appellee.

Cochran, J., delivered the opinion of the court.

Frances M. Carter and her husband, Edwin R. Carter, III, were divorced by final decree of the trial court entered February 15, 1972. This decree approved and incorporated therein a settlement agreement between the parties dated September 14, 1971, which provided that Frances should have custody of their minor children, a son and two daughters, and that Edwin should pay to her a specified sum each month "in lieu of alimony and as further support and maintenance of said children." In July, 1973, because of Frances's health problems, Edwin

took custody of the two children who were still unemancipated, and, in a separate proceeding, petitioned the court for their permanent custody and for termination of his monthly payments to Frances. By order entered August 13, 1973, temporary custody of the children was awarded to Edwin. At a subsequent hearing on the merits the chancellor found the settlement agreement to be ambiguous, heard evidence as to the intent of the parties, and, in an oral opinion, held that they intended one-fourth of the monthly payments to Frances to survive the transfer of custody of the children from Frances to Edwin, and further held, without objection by Frances, that custody of the children should be continued in Edwin. Frances appeals that portion of the order entered on December 26, 1973, pursuant to the chancellor's opinion, that reduced Edwin's payments to her.

The two paragraphs of the agreement that gave rise to the present controversy read as follows:

> "(15) As payment in lieu of alimony and as further support and maintenance of said children, Husband agrees to pay to Wife during the balance of the year 1971, the sum of $300 per month. Husband delivers to Wife six (6) postdated checks of $150.00 each to provide cash over the period until December 31, 1971, in satisfaction hereof. *During the year 1972, as payment in lieu of alimony and as further support and maintenance for said children, Husband agrees to pay Wife the sum of $900.00 per month, commencing January 1, 1972, and thereafter the sum of $600.00 per month, commencing January 1, 1973, said payments to continue until the death or remarriage of Wife, or the emancipation, by attainment of majority or otherwise, of all of said children, whichever first occurs.* (Emphasis added.)

> *"All payments of alimony shall cease if at any time any court decrees any increase in payments for the support and maintenance of said children over those provided herein,* but otherwise the payments provided in this paragraph shall constitute and be an obligation of the estate of Husband and this agreement shall be binding upon his heirs, executors, administrators, successors and assigns. (Emphasis added.)

> "(16) The parties recognize that the income of Husband is irregular in nature and agree that such fact shall be

reasonably considered in enforcement of this agreement. The parties further recognize that Husband intends to make additional voluntary payments to Wife for the support and maintenance of Wife and said children as his circumstances from time to time permit and agree that any such payments shall not be construed as evidence of the financial condition of Husband. *Should either party hereto desire to change this agreement in respect to child custody, or support and maintenance of said children, the party desiring such change shall first make an honest and sincere effort to negotiate with the other in respect thereto as a condition precedent to applying to any court for such change.*" (Emphasis added.)

Other paragraphs contained further provisions by Edwin for the benefit of Frances and the children. Under paragraph (8) of the separation agreement Edwin agreed to convey to Frances his interest in the residence of the parties, subject to assumption by Frances of the outstanding deed of trust indebtedness thereon. Frances agreed, during the minority of the children, not to sell or further encumber the property unless all proceeds of the sale or encumbrance were applied toward the purchase or improvement of residential property for the use of Frances and the children. By paragraph (9) Edwin agreed to pay necessary medical and dental expenses for Frances and the children (except expenses incurred for treatment of mental or emotional disorders of Frances after December 31, 1972), the liability of Edwin for such expenses of Frances to terminate upon her death or remarriage and for such expenses of the children to terminate upon their becoming emancipated or attaining the age of 21 years. In paragraph (13) Edwin agreed to pay all expenses incident to the education of the children in public or private schools, including college and graduate schools, and this obligation, in the event of his death, was made binding upon his estate.

The evidence shows that Edwin wished to continue the marriage, that Frances, expecting to marry another, had sought the divorce, but that after the divorce Edwin, and not Frances, had remarried. The agreement, drafted by Edwin, an attorney, was revised and completed after conferences with Frances's attorney, Thomas J. Michie, Jr. The language of paragraph (15) was carefully chosen to make the payments to Frances taxable to her and deductible by Edwin, by deliberately avoiding

apportionment of the payments as between alimony and child support, pursuant to principles enunciated in *Commissioner* v. *Lester*, 366 U.S. 299 (1961). There, it was held that payments made by a husband for support of his former wife and children were deductible from the husband's gross income and taxable to the wife unless the agreement fixed with "specificity" an amount to be used as child support.

Frances testified that while she did not understand the agreement, she realized that it was designed to effect income tax savings. It was her testimony that she believed that the payments were, in part, for her benefit rather than entirely for the benefit of the children. Her attorney, Michie, testified that the agreement as to payments was a compromise, that Edwin was willing to pay only for Frances's necessities and that even these payments would terminate "when the youngest child reached majority." He considered a portion of the payments to be alimony and, as he recalled the agreement, the payments were, for tax reasons, treated therein as entirely alimony.

Edwin testified that he intended no part of the payments to be alimony for Frances, as evidenced by provision in the agreement for termination of the payments upon emancipation of the children or upon their attaining their majority. However, he maintains that, if the agreement was ambiguous, the trial court could properly determine what portion of the payments was intended to constitute child support.

Edwin testified that he agreed to pay Frances $900 a month for the year 1972, because she expected to receive, and did receive, a Master's degree in School Psychology in order to qualify for a position in the public school system. The payments were to be reduced to $600 a month after 1972. Edwin conceded that the additional $300 a month which he paid to her during 1972 could be considered as for her benefit.

The evidence shows that Frances became mentally ill and was hospitalized in August, 1972. When she was again hospitalized in the summer of 1973, it became necessary for Edwin to take the two unemancipated children into his home. Because of her recurring health problems, Frances was not employed in public education at the time of the hearing, but was employed in a lower salaried position as a proof reader for a publishing company.

Both Carters testified that they never contemplated that

custody of the children would ever be changed from Frances to Edwin. Nevertheless, the agreement provided in paragraph (16) a procedure whereby a change in child custody could be effected either through negotiation or court action.

Frances argues that no thought was given to the possibility that the monthly payments to her would be apportioned. However, she admitted that she understood the payments to be part alimony and part child support. Moreover, paragraph (16) implicitly authorizes allocation of payments by providing for changes in child support payments, and paragraph (15) anticipates the possibility of increases in such payments by providing that "payments of alimony shall cease" if any court should order increases in child support.

Edwin testified that, in drafting the agreement, he considered reducing the $600 monthly payments by one-fourth to exclude any alimony for Frances. He left the full amount undisturbed, however, in order that support for the family unit would not be lowered, and in order that the three children would not "have steak for dinner while their mother does not."

Evidence was introduced as to the respective assets, debts, incomes, and living expenses of the parties. There was evidence that Frances had other assets in addition to her equity in the residence, that Edwin had income of approximately $16,500 in 1972, including income from investments, when he had paid to Frances directly or for her medical expenses and charge accounts more than $20,000, and that his estimated income from all sources for 1973 would be about $15,500. Edwin gave detailed information as to his loans and other obligations.

During the hearing, Edwin agreed in open court to eliminate the restriction against alienation of the residence property by Frances, since she would no longer have custody of the children or be required to maintain a home for them. He estimated the market value of the house to be at least $45,000, subject to deed of trust indebtedness which the agreement stated to be $26,000 when incurred in 1970.

After hearing the evidence, the chancellor ruled that the agreement provided for alimony as well as child support; that Edwin's income was insufficient both to support the two children in his custody and to pay $600 monthly to Frances; that the agreement, as modified by elimination of the restriction against sale or encumbrance of the residence, should be

construed to mean that the parties intended that Frances and the three children should share equally in the $600 payments; and that three-fourths of the payments, therefore, were child support, terminating upon transfer of custody, and one-fourth was alimony, continuing until all the children are emancipated or attain majority.

Frances contends, as she contended in the trial court, that, under the provisions of the agreement, the $600 payments to her were not subject to reduction by the trial court. If the $600 payments were intended to be entirely for her support, the trial court would have no power to reduce the payments. Code § 20-109 (Cum. Supp. 1973) [1]; *McLoughlin* v. *McLoughlin*, 211 Va. 365, 177 S.E.2d 781 (1970); *Dienhart* v. *Dienhart*, 210 Va. 101, 168 S.E.2d 279 (1969). If, however, a portion of the payments was intended to be for child support, the trial court could modify its decree as to that portion. Code § 20-108 (Repl. Vol. 1960).[2] Edwin argued in the trial court that the $600 payments were entirely for child support, terminable when he was awarded custody of the children. He conceded, however, that $300 per month of the $900 monthly payments in 1972 were for Frances's direct benefit, and he assigned no cross-error to the ruling of the chancellor that one-fourth of the $600 payments was alimony.

We find no error in the chancellor's ruling that the settlement agreement provided for both alimony and child support. The wording of the agreement, as well as other evidence, fully supports this construction. Indeed, in oral argument before us, Edwin's counsel conceded that the agreement provided for some alimony.

Although Code § 20-109 prohibits a court from entering any order directing payment of alimony except in accordance with an

---

[1] **"Code § 20-109. Changing alimony; effect of stipulations as to alimony; cessation upon remarriage or death.** — Upon petition of either party the court may increase, decrease, or cause to cease, any alimony that may thereafter accrue whether the same has been heretofore or hereafter awarded, as the circumstances may make proper; provided, however, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed with the pleadings or depositions, then no decree or order directing the payment of alimony, suit money, or counsel fee shall be entered except in accordance with that stipulation or contract . . . ."

[2] **"Code § 20-108. Revision and alteration of such decrees.** — The court may, from time to time after [entering a decree ordering payments of alimony or child support under Code § 20-107] . . . revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require."

approved separation agreement, the statute is inapplicable here because the chancellor was construing the agreement rather than modifying the alimony provisions thereof. By implication, the agreement authorized apportionment of the payments as between alimony and child support. Moreover, the trial court cannot be precluded by agreement from exercising its statutory power under Code § 20-108 to alter child support under appropriate circumstances. *Gloth* v. *Gloth,* 154 Va. 511, 551, 153 S.E. 879, 892 (1930).

In some jurisdictions it is held that the court may apportion unitary awards made pursuant to settlement agreements in divorce proceedings. *Meek* v. *Meek,* 51 Cal. App. 2d 492, 125 P.2d 117 (1942); *Sturgis* v. *Sturgis,* 300 Mich. 438, 2 N.W.2d 454 (1942); *Hayes* v. *Hayes,* 156 S.W.2d 34 (Mo. App. 1941). In other jurisdictions the contrary view is held. *Blunda* v. *Blunda,* 101 So.2d 41 (Fla. 1958); *Spear* v. *Spear,* 158 Md. 672, 149 A. 468 (1930); *Nichols* v. *Nichols,* 306 N.Y. 490, 119 N.E.2d 351 (1954). Annot., 78 A.L.R.2d 1110, § 15 (1961). We adopt the rule that our courts may apportion such unitary awards.

The terms of the agreement, by continuing the $600 payments without reduction while any of the children remained unemancipated and in Frances's custody, would cause the alimony portion of the payments to increase and the child support portion to decrease as each child became emancipated. Therefore, the apportionment of payments should have been made as of the time when the agreement was modified by transfer of custody of the two unemancipated children from Frances to Edwin.

The chancellor was justified in construing the agreement to mean that Frances and each of the children had an equal share in the payments. The evidence supports the conclusion that a major portion was for the children, as the chancellor found, and that the intent was to require Frances to maintain the family residence intact, including furniture and furnishings belonging to Edwin, so long as any of the unemancipated children lived there. The chancellor acknowledged in his opinion that it might be argued that if Frances could not sell the house and had to maintain it, the $600 payments should be continued, after the change in custody of the children, but he noted that the restrictions had been removed by Edwin's "agreement in open court to permit her to sell it."

Where two persons take title to land, in the absence of proof to the contrary, they are entitled to the land in equal proportions, *Smith* v. *Alderson*, 116 Va. 986, 989, 83 S.E. 373, 374 (1914); *Jarrett* v. *Johnson*, 11 Gratt. (52 Va.) 327 (1854). By analogy, we hold that, under the facts of the present case, the chancellor could properly presume that the $600 payments were for the equal benefit of Frances and the children in her custody. There was no proof to the contrary. Edwin testified that he intended no part of the payments as alimony, but that he once contemplated redrafting the agreement to reduce the payments by one-fourth so that Frances would not receive any benefits therefrom. Frances testified that she considered the payments to be both alimony and child support and that her intent was to receive the $600 payments under the agreement, even though the children were no longer with her, because she thought that Edwin owed her "some support." Under these circumstances, the chancellor could conclude that Frances and the children had equal shares in the payments.

The chancellor erred, however, in fixing Frances's share at one-fourth. After the oldest child became emancipated, each of the three remaining beneficiaries became entitled to one-third of the payments. The chancellor, taking into consideration not only the change in custody but also the modification in the agreement caused by Edwin's agreement to release the restriction on the residence, construed the modified agreement to apply to the family unit as constituted when the agreement was executed. We believe that the modified agreement should be applied to the family unit as constituted at the time Edwin took legal custody of the unemancipated children, so that the apportionment of alimony to Frances should have been one-third of the $600 monthly payments.

In oral argument, Edwin's counsel contended that the chancellor had the power to make his decree retroactive to the date Edwin filed his bill of complaint. He conceded that if the chancellor had no such power, then Edwin would be liable for $600 per month until the date of the decree appealed from, less credits for payments made. We hold that Edwin was not entitled, by the mere filing of his bill of complaint, to terminate or reduce support payments. Accordingly, the chancellor erred to the extent that he altered or cancelled accrued installments. *Cf. Cofer* v. *Cofer*, 205 Va. 834, 140 S.E.2d 663 (1965).

We find no merit in Frances's other assignments of error. For the reasons assigned, however, the decree is reversed in part and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Affirmed in part; reversed in part; and remanded.*