## Richmond

PHYLLIS FEATHERSTONE

v.

HENRY S. BROOKS

October 5, 1979.

Record No. 780118.

Present: All the Justices.

*G. H. Gromel, Jr.* (*Christopher J. Habenicht; Hunton & Williams,* on briefs), for appellant.

*Ilona Ely Freedman* for appellee.

HARMAN, J., delivered the opinion of the Court.

The issue on this appeal is whether the Chancellor erred in altering and revising a former decree by ordering Phyllis Featherstone (Featherstone), formerly Phyllis Featherstone Brooks, to pay the sum of $100 monthly to her former husband, Henry S. Brooks (Brooks), for maintenance and support of their three minor children, now ages 13, 11 and 9, who are in Brooks' custody.

On June 5, 1975, the trial court awarded Brooks a divorce from Featherstone on the ground of desertion. This decree confirmed and incorporated a property settlement agreement between the parties, which provided, in pertinent part:

> "2. The parties agree that the [h]usband shall have sole and complete custody of their three (3) children born of this marriage, with reasonable visitation rights reserved to the wife. During the periods of time that the children are with the wife she is to make sure that they continue to receive their religious training and she will be responsible for their support and maintenance."

In July, 1977, Brooks, pursuant to Code § 20-108, petitioned the trial court to amend and revise the final divorce decree so as to require Featherstone to regularly contribute to the maintenance and support of the minor children. After an *ore tenus* hearing on Brooks' allegation that there had been a material change in the financial circumstances of the parties, the trial court found such a change and decreed that Featherstone should pay $100 monthly to Brooks for support and maintenance of the minor children.

Having prevailed before the Chancellor, Brooks is entitled to have the evidence viewed here in the light most favorable to him. Thus viewed, the evidence shows that Brooks' monthly expenses exceeded his monthly income by approximately $700, and that certain itemized expenses had increased by a monthly total of almost $600 since entry of the 1975 decree. While his annual salary had increased from $29,800 in 1975 to $36,700 on October 1, 1977, Brooks testified that an increase in his income tax liability and the other expenses of his family far exceeded his increase in income during this period. His net monthly pay in 1975 was approximately $1850 on an annual

salary of $29,800. Prior to October 1, 1977, Brooks' net monthly pay was $2114.33 based on an annual salary of $34,473, an increase of less than $300 since 1975. He related that the cost of living in the Washington metropolitan area had increased by 22.2% during the preceding two years. Brooks testified that he had almost exhausted his savings and other assets in order to pay the increased expense of operating his household.

More specifically, Brooks' testimony shows his utility and heating costs had increased by $72 monthly, an increase of 120%, and that his real and personal property taxes had increased approximately $50 monthly, an increase of more than 35%. Brooks further related that since entry of the divorce decree the two older children were required to undergo orthodontic treatment at a monthly cost of $100 and that the youngest child had developed health problems requiring a weekly visit to a physician, thus increasing the family's total medical expenses. He also testified that he was expending $40 monthly for a day camp for the children, another new expense. The two older children had recently begun taking music lessons at a cost of $50 monthly. Brooks also stated that it had recently become necessary for him to trade his 10 year-old car for a new one, resulting in an additional monthly payment of $124.96. Brooks' testimony shows that he continues to make a $597.91 monthly mortgage payment on his home, the same dwelling his family occupied prior to the divorce. In addition to the car payment of $124.96, he was obligated to make a monthly payment of $114.18 on an indebtedness of $5500 to the credit union where he is employed. Prior to the time the parties separated, a housekeeper was employed at a cost of $85 per week or $368 per month. On the date of the hearing he employed a housekeeper at a monthly expense of $508, an increase of 38%.

On the date Brooks testified, his outstanding accounts payable totaled $1590. His bank balances were slightly in excess of $2000 and he owned stocks which he valued at $3000.

Brooks testified that after Featherstone deserted him and prior to entry of the divorce decree, she kept the children every second weekend and for two weeks during the summer. During those periods she provided for their needs and frequently gave them gifts and made or bought clothing for them. Brooks further testified that Featherstone, after entry of the final decree, seldom saw the children and ceased making gifts to them.

Featherstone testified that her 1975 annual salary was approximately $9500 prior to her move to New York. After moving to New York her annual salary had increased to $13,825 annually on the

date of the hearing, an increase of more than 45%. She presented an exhibit showing that her net monthly income was $742.30 and that her monthly expenses exceeded her monthly income by approximately $10. In reviewing this exhibit we note that there is a $75 monthly deduction from her salary for "Thrift". Her testimony discloses that this deduction represents payments to a savings plan for her benefit, so her net monthly income was at least $817.30. In addition, Featherstone had received a refund of federal income taxes withheld during each of the three preceding years. The refund for the 1976 tax year was $372.

Other monthly expenses itemized by Featherstone included a mortgage payment of $195.47 and heat, utility and telephone expenses of $76.50 a month. The exhibit also shows a monthly payment of $20 for "Furnace Converter". Featherstone testified that those items represented half of the monthly payments or expenses for a residence which she jointly occupied with her sister, brother-in-law and their child and the other half of these expenses was paid by her brother-in-law.

Featherstone acknowledged that she received $22,500 from the property settlement agreement with her former husband. From those funds, she used $17,500 as the down payment on the $53,500 New York residence which was jointly conveyed to Featherstone and her brother-in-law. In addition to the down payment, Featherstone stated that she expended $3,000 to pay all closing costs incident to the purchase of this property.

Other monthly expenses itemized by Featherstone included transportation expense of $132, a church pledge of $54, groceries and food of $184 and charge account payments of $50.

When asked if she was willing to contribute to the support of her children to the extent of her financial ability, Featherstone responded that she was unable to do so because she was "just . . . making it from day-to-day." She expressed doubt that there was a "legitimate need" for such a contribution, but said she would contribute if required by law.

■ Certain well-established legal principles apply in our review of this case. Code § 20-108 gives the divorce court continuing jurisdiction to change or modify its decree concerning the custody and maintenance of minor children, and a contract between husband and wife cannot prevent the court from exercising this power. *Carter* v. *Carter,* 215 Va. 475, 481, 211 S.E.2d 253, 258 (1975). In exercising this power the court may revise and alter its decree if a material change in condition and circumstances has occurred. *Campbell* v. *Campbell,* 203 Va. 61, 64, 122 S.E.2d 658, 661 (1961). The burden rests upon the

party seeking to alter the decree to establish such a change by a preponderance of the evidence. *Hammers* v. *Hammers,* 216 Va. 30, 31, 216 S.E.2d 20, 21 (1975).

In deciding this case, we must first determine whether the evidence adduced disclosed such a material change in the condition and circumstances of the parties as to authorize a modification of the earlier decree.

While it is difficult to understand why Brooks, whose income is well above average, is unable to maintain his household on his annual salary of $36,700, Featherstone did not challenge Brooks' testimony that the monthly expenses of his household exceeded his net monthly income by approximately $700. Nor did she challenge any of the individual items as unreasonable, unnecessary, or not in keeping with the standard of living established by the parties during the marriage.

Clearly the cost of orthodontic care, day camp and music lessons, and added medical expenses are all additional expenses attributable to the increased needs of the growing children. Furthermore, Featherstone, who had made some contribution, albeit a nominal one, to maintaining the children while she resided in the Washington area, terminated this support after entry of the final decree. While Brooks' gross earnings had increased by approximately $6000 between June, 1975, and September, 1977, his net monthly salary, prior to his October, 1977, raise, had increased by less than $300. During this same period his monthly expenses increased by about $600. The only evidence indicating the effect of the 1977 raise on Brooks' net income was his testimony that this increase would add approximately $100 to his net monthly income, still leaving a monthly shortfall of at least $200 between his income and his expenditures for maintaining his household.

We hold that this evidence establishes a material change in the conditions and circumstances of the parties, and the Chancellor, therefore, had the power and authority to revise and alter the original decree.

Featherstone, in the alternative, argues that even if the evidence shows a material change of circumstances, the trial court erred in requiring her to contribute to the support and maintenance of her children "because her necessary living expenses exceed her disposable income." We find no merit in this contention. Featherstone's own exhibit and testimony reveals this is not the case. When her stated net income is adjusted to reflect her savings and the excess federal income taxes being withheld from her salary, this alone provides a sufficient amount for her to meet the modest allowance fixed by the trial court

for the support of her children.

Moreover, Featherstone's evidence concerning the down payment and closing costs on the New York house, coupled with her evidence showing that she is paying a disproportionate share of the operating expense of that household, establishes that she is making a substantial contribution to maintenance and support of her sister's family, to whom she owes no legal duty of support.

■ Both parents of a child owe that child a duty of support during minority. In allocating this burden between parents, the law requires the court to consider, along with other factors, the "earning capacity, obligations and needs, and financial resources of the parties." Code § 20-107(1). The decree of the Chancellor determining questions of fact on conflicting evidence *ore tenus* has the weight of a jury verdict, and will be permitted to stand unless plainly wrong or without evidence to support it. *Mundy* v. *Hesson,* 215 Va. 386, 392, 209 S.E.2d 917, 921 (1974). Here the Chancellor, who heard the parties testify and observed their demeanor, concluded that Featherstone could and should contribute the sum of $100 monthly toward the support of her minor children. Since the Chancellor's ruling is not plainly wrong or without evidence to support it, we will affirm the decree.

*Affirmed.*

CARRICO, J., dissenting.

As the majority opinion points out, a divorce court may change or modify its decree concerning child maintenance if the party seeking the modification shows that a material change in conditions and circumstances has occurred since entry of the decree. Simply stated, my position is that the father, who sought the modification in this case, failed completely to show a material change in conditions and circumstances. Accordingly, I would reverse the decree appealed from.