**Arlington**

STEPHEN C. YOHAY

v.

PATRICIA RYAN

No. 1399-85

Decided August 4, 1987

COUNSEL

Stephen C. Yohay, on brief, Pro Se.

Bernard J. DiMuro (Hirschkop & Associates, P.C., on brief), for appellee.

OPINION

**KEENAN, J.** — Stephen C. Yohay (father) appeals from the denial of his petition to reduce child support. The issues presented in this appeal are: (1) whether the trial court erred in denying a reduction in child support after it found that there had been a material change in the financial circumstances of the parties; (2) whether the trial court erred in failing to consider all of the factors set forth in Code § 20-107.2(2)[1] when considering a petition for modification of child support made pursuant to Code § 20-

---

[1] Code § 20-107.2(2) provides: The court, in determining the amount of support of a child or children to whom a duty of support is owed pursuant to § 20-61, shall consider the following:

 (a) The age and physical and mental condition of the child or children;

 (b) The independent financial resources, if any, of the child or children;

 (c) The standard of living for the family established during the marriage;

 (d) The earning capacity, obligations and needs, and financial resources of each parent;

108;[2] (3) whether the trial court improperly relied on the property settlement agreement in denying the father's petition; (4) whether the trial court failed to apply the principle that both parties owe a duty of support to their minor children; and (5) whether the trial court gave improper consideration to the father's "second family" expenses when denying his request for a reduction in child support. We conclude that the trial court committed error both in imposing an improper burden of proof on the father and in relying on the terms of a four year old property settlement agreement when denying the father's petition for a reduction of child support.

## I.

This appeal arises out of protracted litigation between the parties regarding the custody and support of their minor child, Michael, who was nine years old when the court denied the father's request for a reduction in child support. The parties separated in April 1980 and in August 1981, entered into a property settlement agreement. This agreement provided for joint custody of Michael and a unitary support and maintenance payment which automatically changed to a payment of $600 per month for child support only, commencing in May, 1984. A further provision was included which stated:

(g) The Wife [mother] acknowledges that the amount herein provided for the child support constitutes an amount in ex-

---

(e) The education and training of the parties and the ability and opportunity of the parties to secure such education and training;

(f) The contributions, monetary and nonmonetary, of each party to the well-being of the family;

(g) The provisions made with regard to the marital property under § 20-107.3; and

(h) Such other factors, including tax consequences to each party, as are necessary to consider the equities for the parents and children.

[2] Code § 20-108 provides: The court may, from time to time after decreeing as provided in § 20-107.2, on petition of either of the parents, or on its own motion or upon petition of any probation officer or superintendent of public welfare, which petition shall set forth the reasons for the relief sought, revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parties and the benefit of the children may require.

cess of the need and requirements for the support of the child as contemplated by the provisions of the Internal Revenue Code of 1954, as amended, and the rules and regulations thereunder. She therefore agrees that the Husband [father] shall have the sole exclusive right to claim the child on his income tax returns, and the Wife [mother] further agrees that she shall not claim the said child on her tax return.

The mother testified that her financial situation was very poor at the time of the agreement. The father acknowledged that his financial posture was sound at that time.

The father remarried in July, 1982. He and his second wife now have an infant child. In early 1983, the mother moved for sole custody of Michael. The court denied her request, established a weekly schedule of "alternating sole custody," and ruled that Michael would attend a public school near the father's home.

The mother remarried in September, 1983. Pursuant to the father's motion for a reduction of child support, the trial court received considerable testimony and documentary evidence concerning the financial circumstances of the parties. The income of both parties increased after the property settlement agreement was signed in 1981. The father's annual draw from his law firm increased from $65,000 in 1983 to $93,000 in 1985. The mother's 1981 tax returns showed that her gross income from her law practice was $37,920. Her 1984 gross income was $64,654.

Both parties incurred significant debts for legal fees associated with the litigation over their child. The mother's counsel represented to the court that her legal fees exceeded $50,000. The father stated that he had incurred legal fees of between $40,000 and $50,000.

In addition, the father testified that in an effort to generate more money, he had not made quarterly tax payments in 1983 or 1984. While some of this debt had been paid by the time of the hearing, the father estimated that he still owed over $17,000 in back taxes. The father further claimed to owe $37,000 to his father, $3,000 to his brother-in-law, and $4,500 to his law firm. Adding certain other debts, the father estimated his total debt at $91,670.

The testimony also showed that in May, 1984 the father purchased a home for $144,550. His expense statement showed a mortgage payment of $1,559 per month. The father testified that he was forced to move out of the house he had been renting because of the owner's return. He stated that he decided to buy a house rather than rent one because he wanted a tax shelter and because he wanted to remain in the same neighborhood for Michael's benefit. He further testified that rentals in the neighborhood were roughly equal to his mortgage payment.

The father filed an expense statement for 1981, which showed a $587 monthly surplus. His expense statement for 1985 showed a monthly deficit of $3,192. The record does not contain a clear statement of the mother's monthly income and expenses; however, she did file a statement which showed expenses for Michael in 1985 to be $689 per month. The father calculated that aside from Michael's portion of the general household expenses, the mother's monthly expenses for Michael were $213 per month.

The father's expense statement showed an average of $268 in monthly expenses for Michael in 1984. In addition, it showed a monthly average of $280 for Michael's medical expenses. The father's estimate did not include costs for Michael for such items as food, mortgage, entertainment, utilities or vacations.

On July 25, 1985, the trial court denied the father's request for a reduction in support. Prior to hearing the closing arguments of counsel, the trial court ruled as to the father's burden of proof:

> [T]he court rules as a matter of law that on Mr. Yohay's petition for equalization of support the burden of proof is on Mr. Yohay to establish by the preponderance of the evidence that there has been a material change in the circumstances of the parties and that it would be in the best interest of the child to grant the relief sought.

In announcing its decision to deny a reduction in support, the court found that while there had been material changes in the circumstances of the parties, the father's increased indebtedness was primarily due to "second family" expenses and the costs of litigating the custody and support issues. The court held that these reasons did not constitute grounds for reducing the father's child support obligation. However, regarding the mother's need for child

support, the court stated:

> I am of the opinion . . . that while I recognize without debate and dispute that there have been material changes in circumstances of the parties . . . and I'm not finding this as a matter of fact that Miss Ryan does not need the $600 a month. I want the record to be clear. I am not making that finding. All I am saying is that it may be that the $600 a month . . . may be in excess of her financial needs vis-a-vis the child.

The court also indicated that its decision was "in large measure because of the language in the separation agreement." Finally, the court indicated that in reaching its decision, it considered the totality of the parties' circumstances, as well as the needs of the child.

## II.

The father first argues that the trial court erred when it denied a reduction in child support after finding that there had been a material change in the financial circumstances of the parties. The father further contends that the trial court improperly imposed upon him a duty to prove that a reduction in support would be in the best interests of his child. In response, the wife contends that the trial court's application of the burden of proof was correct because a change in circumstances which does not affect the children cannot stand as the basis for a reduction in support.

We agree with the trial court's statement that the existence of a material change in circumstances does not automatically mandate a change in the amount of support. We disagree, however, with the court's further ruling that the moving party must prove that a change in the amount of support would be in the best interests of the child.

In *Edwards v. Lowry*, 232 Va. 110, 348 S.E.2d 259 (1986), the Supreme Court stated the evidentiary standard applicable to a petition to modify support made pursuant to Code § 20-108:

> In order to invoke the court's continuing jurisdiction to modify its decree, the party seeking a change has the burden of

proving, by a preponderance of the evidence, a material change in circumstances justifying a modification of the decree. As we further noted in *Hammers*, a party seeking a reduction in support payments has additional burdens: "[H]e must make a full and clear disclosure relating to his ability to pay. He must also show that his lack of ability to pay is not due to his own voluntary act or because of his neglect."

*Id.* at 112-13, 348 S.E.2d at 261 (quoting *Hammers v. Hammers*, 216 Va. 30, 31-32, 216 S.E.2d 20, 21 (1975)) (citations omitted).

 The moving party in a petition for modification of support is required, therefore, to prove both a material change in circumstances and that such change justifies an alteration in the amount of support. A material change in circumstances, standing alone, does not provide a basis for the trial court to modify its support decree. A modification is appropriate only after the court has considered the material change in circumstances in relation to the factors set forth in Code § 20-108, namely, the present circumstances of both parties and the benefit of the children. Thus, in a petition for reduction of support, the trial court must assess whether the requested reduction, based on a material change in circumstances, is justified in light of the overall circumstances of both parties and the impact on the needs of the children.

 A party moving for a reduction in support is not required, however, to prove that the reduction would be in the best interests of the children. The best interests of the children is a specific factor for the court's consideration in determining matters of custody and visitation. Code § 20-107.2(1). To require proof that the reduction in support was in the best interests of the children would, in most instances, place an impossible burden on the moving party.

In the case before us, the trial court did state that it had reviewed the circumstances of the parties and the needs of the child in finding that a reduction in support was not justified. It is impossible to assess, however, whether the trial court's use of an incorrect burden of proof affected this final determination. Therefore, we must conclude that the trial court committed reversible error in ruling that the father was required to prove that a reduction in support was in the best interests of the parties' minor child.

The husband next argues that the trial court erred in failing to consider all of the factors set out in Code § 20-107.2(2) when considering his petition for modification of support. We disagree. That section applies to the court's initial allocation of the burden of child support "[u]pon decreeing the dissolution of a marriage, and also upon decreeing a divorce, whether from the bond of matrimony or from bed and board, and upon decreeing that neither party is entitled to a divorce." Code § 20-107.2.

In contrast, Code § 20-108 gives the trial court authority to revise and alter support and custody decrees "as the circumstances of the parents and the benefit of the children may require." This standard governs support reduction petitions. However, some of the considerations encompassed within this standard may overlap with the specific requirements of Code § 20-107.2(2). The particular circumstances of each case must be the focus of the trial court's inquiry. It is not required to reconsider all of the factors of Code § 20-107.2(2). Rather, Code § 20-108 directs the court to consider matters relevant to the circumstances of the parties and the benefit of the children which arise in the factual context of the petition for modification of support. For this reason, we conclude that the trial court did not err when it ruled it was not bound to consider all of the factors of Code § 20-107.2(2) in hearing the father's petition for reduction of child support.

We turn now to consider the father's contention that the trial court erred when it relied on the property settlement agreement when denying his petition. The father argues that because the financial circumstances of the parties were materially different in 1981 when the agreement was signed, the court should not have accorded it significant weight when deciding the issue of support modification.

The trial court specifically stated that its decision to deny a reduction in support was "in large measure because of the language in the separation agreement." In that agreement, the husband agreed to pay $600 per month for child support. Since that time, however, the financial circumstances of both parties had changed and the trial court found these changes to be material. These changes may or may not have justified a reduction in child support. They were, however, matters for the court's primary consideration in the context of the present circumstances of the parties and the overall benefit of the child. The existence of a prop-

erty settlement agreement does not alter the focus of the court's inquiry pursuant to Code § 20-108. In *Featherstone v. Brooks*, 220 Va. 443, 258 S.E.2d 513 (1979), the Supreme Court stated:

> Code § 20-108 gives the divorce court continuing jurisdiction to change or modify its decree concerning the custody and maintenance of minor children, and a contract between husband and wife cannot prevent the court from exercising this power. In exercising this power the court may revise and alter its decree if a material change in condition and circumstances has occurred.

*Id.* at 446, 258 S.E.2d at 515.

In the case before us, we find that the trial court erred when it based its decision "in large measure because of the language in the property settlement agreement." Having found that there were material changes in the circumstances of the parties, the court was required to evaluate whether those changes in circumstances justified a reduction in support when considered in relation to the parties' present circumstances and the benefit of the child. We conclude that because the trial court placed primary reliance on the provisions of the property settlement agreement, it misdirected its primary focus and failed to give due consideration to the factors specified in Code § 20-108.

The father next argues that the trial court failed to apply the principle that both parties owe a duty of support to their minor children. He contends that because the trial court did not make a finding of fact as to the mother's net income, it could not have properly assessed whether she was contributing to Michael's support. The father further argues that the evidence mandated a finding that the wife was not spending any of her own money on Michael.

It is well settled that both parties owe a duty of support to their minor children. *Featherstone*, 220 Va. at 448, 258 S.E.2d at 516. While it would have been preferable for the trial court to have made a finding as to the mother's income, we need not resolve this issue because of our conclusion that the trial court assigned an incorrect burden of proof to the father and improperly relied on the property settlement agreement when denying the father's petition.

■ The father also argues that because he based his petition to reduce support only on the mother's change in financial circumstances, the trial court was not entitled to deny his petition based on his own financial situation. When denying the father's motion to reconsider its decision, the trial court stated: "[Mr. Yohay's debts] are for all intents and purposes, obligations assumed by Mr. Yohay voluntarily. They derive, I find, as a matter of fact, that they derive primarily from his responsibility with regard to his second household." The trial court then applied the principle set forth in *Hammers v. Hammers*, 216 Va. 30, 216 S.E.2d 20 (1975) regarding the moving party's ability to pay support: "[H]e must make a full and clear disclosure relating to his ability to pay. He must also show that his lack of ability to pay is not due to his own voluntary act or because of his neglect." *Id.* at 31-32, 216 S.E.2d at 21.

■ We reject the father's argument that the trial court was automatically required to grant a reduction in support once it found that the mother's financial circumstances had improved. In petitioning the court for equitable relief, the father necessarily placed his financial circumstances, as well as the mother's, before the court for its consideration. Code § 20-108 does not permit the trial court to consider only the circumstances of one of the parties. Pursuant to that statute, the circumstances of both parties, as well as the benefit of the children, are subjects for the court's evaluation. In stating this principle, however, we express no opinion as to whether in this case the trial court properly concluded that the father's petition should be denied because his "second family" expenses created most of his financial problems. We are unable to properly review this finding due to the trial court's error in setting an incorrect burden of proof, as well as its misplaced reliance on the terms of the property settlement agreement.

In summary, therefore, we find that the trial court was not automatically required to change the amount of support upon finding a material change in the parties' circumstances; that the court erred in holding that the father was required to prove that a change in the amount of support would be in the best interests of the child; that the court was not required to consider all of the factors of Code § 20-107.2(2) when considering a petition to modify support made pursuant to Code § 20-108; that the court erred in placing primary reliance on the terms of the property set-

tlement agreement after finding a material change in both parties' financial circumstances; and that the court was not automatically required to grant a reduction in support once the father established that the mother's financial circumstances had improved. Accordingly, the decree appealed from is reversed and this cause is remanded to the trial court for a new hearing applying the principles expressed herein.

*Reversed and remanded.*

Duff, J., concurred.

Benton, J., dissenting.

I respectfully dissent because I believe that the trial judge correctly applied Virginia law when denying Yohay's petition for a reduction in child support. Code § 20-108 states that "[t]he court may, from time to time . . . revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require."

At the conclusion of several days of *ore tenus* hearings and after reviewing briefs of counsel, the judge *pro tempore* made the following statement from the bench prior to hearing closing argument from counsel:

> As I have briefly indicated to counsel in chambers, the Court on reviewing the briefs and arguments of law presented by counsel on the question of burden of proof, the Court rules as a matter of law that on Mr. Yohay's petition for equalization of support the burden of proof is on Mr. Yohay to establish by the preponderance of the evidence that there has been a material change in the circumstances of the parties and that it would be in the best interest of the child to grant the relief sought. That ruling is based upon the *Featherstone* case and its progeny and its history.

Yohay's counsel did not object to this statement by the judge. Moreover, I believe that one can reasonably conclude from the record there was no objection because counsel perceived that the judge in fact was addressing the *Featherstone* standard and that the judge had done no more than unintentionally misstate the re-

quirements of Code § 20-108.

In her brief in opposition to Yohay's motion to reduce support payments, Ryan cited *Featherstone v. Brooks*, 220 Va. 443, 258 S.E.2d 513 (1979); and *Hammers v. Hammers*, 216 Va. 30, 216 S.E.2d 20 (1975) in support of her position that Yohay bore the burden of proving a material change in circumstances justifying a reduction in child support. Her brief contained no reference to a burden of proof standard which encompassed "the best interest of the child." Furthermore, I believe that it is sufficiently clear from the following exchanges between Yohay's counsel and the judge during closing argument that the phrase "best interest of the child" was used by both the judge and Yohay's counsel as a loose, imprecise reference to the standard of Code § 20-108 ("the benefit of the children may require") as interpreted in *Featherstone*:

THE COURT: And your argument on the burden regarding *the best interest of the child* is kind of a derivative one. Although there is no evidence that the child is in necessitous circumstances, there is no evidence before the Court that as a result of Mr. Yohay's indebtedness the child is not receiving something that the child should not be receiving.

MR. ROSENFELD: There sure is. The evidence before this Court is the emergency of the financial destitudedness, financial problems that my client has. He is not going to be able to continue to provide his home for his child in the neighborhood and in the school area where the child goes, because he's going deeper and deeper in debt every month and that's going to be the effect of it. It is not speculative. He is going down the tubes. That's how the child would benefit by the relief he is seeking, so he can maintain a home for the child's needs.

THE COURT: Anything else?

MR. ROSENFELD: I'm not sure why the Court is limiting to 20-108 to *the best interest of the child* as opposed to the entire circumstance of the parties and —

THE COURT: (Interposing) I'll tell you why and give you an opportunity to argue this. I see the case law — the line of cases in Virginia interpret that language to require a showing

after material change of circumstances to the parties that the relief sought is in *the best interest of the child.* That's the way I read the case law. I'm not sure that it would differ.

MR. ROSENFELD: Then the last case from the Supreme Court is the *Featherstone* case right out of this district that I have cited.

THE COURT: That's right.

MR. ROSENFELD: That has shown the additional cost that Mr. Yohay has in meeting the needs of the child or material change of circumstances, but you have already found a material change of circumstances. *What's important is it is in the best interest of the child* to enable my client to continue to be able to provide these things for his child, his cost of his housing or his cost of food, cost of soccer, music lessons. These are all the things that the *Featherstone* case based itself upon.

\* \* \*

MR. ROSENFELD: . . . The problem I'm having with the Court's reasoning, when you look at the *Featherstone* case, the *Featherstone* case doesn't exclude the circumstances of the parents. When I asked the Court earlier why are you only looking at *the best interest of the child, Featherstone* says, "We hold that this evidence establishes a material change in the condition and circumstances of the party and the chancellor, therefore, had the power and authority to revise and alter the original decree." That's right out of 20-108, saying the Court may revise and alter such decrees concerning the care and maintenance of the children and make a new decree concerning the circumstances of the parents and the benefit the children may require. Once the Court in *Featherstone* found a material change in circumstances —.

\* \* \*

MR. ROSENFELD: No. I want to apply the law. The law says under 108, as you have ruled, if you show a material change of circumstances, then we may alter and revise the decree based upon the conditions and circumstances of the

parties *in the best interest of the children*, and there is only one guideline for the parties *and best interest of the children* and that's 20-107.2 which are all the facts to consider and you start from scratch. When the Court finds there has been a material change of circumstances, then under 20-108 it can revise and alter the decree as to the circumstances of the party and what the children require and that's what *Featherstone* said. *Featherstone* said, "We hold that this evidence establishes a material change in the condition and circumstances of the party and the chancellor, therefore, had the power and authority to revise and alter the original decree." That's exactly the language of 20-108.

(emphasis added).

I believe that these passages demonstrate that although both the judge and Yohay's counsel used the term "the best interest of the children," the intended reference was actually to "the benefit of" the child, the standard set forth in Code § 20-108.

Moreover, there is no basis upon which Yohay can now suggest that the judge in fact imposed upon him a greater burden of proof than that warranted by *Featherstone*. I am persuaded that the following quotation from the judge's decision reflects a proper understanding of the law applicable to the case:

The law that applied in this case is clearly the law of *Featherstone* versus *Brooks* and the *Hammer* case, and in *Featherstone* the Court said—and I quote—"We hold that this evidence establishes a material change in the conditions and circumstances of the parties and the chancellor, therefore, had the power and authority to revise and alter the decree."

The Court finds as a matter of law that there have been changes in the circumstances as between the parties. Clearly the remarriage of Ms. Ryan and the increase in her income have been one of those changes in circumstances, as has been Mr. Yohay's increase in income and his indebtedness. The Court finds as a matter of fact that the increase in Mr. Yohay's indebtedness is as a result of both his litigation in this matter and in the ancillary but related matters regarding the domestic relations case, but also finds that Ms. Ryan had an equal burden, responsibility and obligation.

The Court has viewed the totality of the circumstances of the parties, their respective incomes and the needs of the child and the parties with regard to their individual financial situation and the respective needs of the parties to provide for those and, based upon the totality of the circumstances, the Court finds that there is no justification at this time for any change or alteration in the amount of support being required under the terms of the separation agreement and of the Final Decree of Divorce.

If there could be any doubt as to the standard of proof employed by the judge, I believe it was dispelled when the judge decided Yohay's motion for reconsideration of the ruling. In the motion for reconsideration Yohay alleged that the judge misstated the burden of proof when he "extrapolated" from *Featherstone* and Code § 20-108 that Yohay's burden was to prove what was in "the best interest of the child." The trial judge received briefs from the parties, granted the motion to reconsider, and heard oral argument from both counsel. The following exchanges which occurred during the argument on the motion amply demonstrate that the judge understood the precise issue to be decided, but that Yohay's counsel continued to use imprecise language concerning the burden of his client:

MR. ROSENFELD:

\* \* \*

The Court, in fact, found that the burden had been carried that yes, there has been a material change in circumstances in Stephen Yohay's financial position, and there's been a material change of circumstances in Pat Ryan's financial circumstances referencing her remarriage, her increase in her income.

THE COURT: That's all conceded. That's part of the Court's findings that there have been material changes in circumstances. That's not an issue.

What is in issue is whether or not those material changes in circumstances justify an increase, justify modification in the underlying Separation and Support Agreement executed by

the parties. And it's the issue of justification that we're all having difficulty.

\* \* \*

THE COURT: Now, I also find that, and there's no debate, that Mr. Yohay's income over the period of time between the execution of the agreement and now has substantially increased. So if you, as the moving party, are looking to a material change in circumstances which might justify, and those are the words, which might justify a change in support, then the only other material circumstance that you can look to is Miss Ryan's remarriage and Miss Ryan's increase in income; right?

MR. ROSENFELD: And the need she has for support.

THE COURT: And the need she has for support.

MR. ROSENFELD: And the needs of the child.

THE COURT: And the needs of the child.

Following the hearing the judge entered an order affirming the previous ruling denying a reduction in support. I believe that the record clearly reflects that despite the imprecise language used by the judge and Yohay's counsel, the judge premised his decision upon "the circumstances of the parents and the benefit of the children" as required by Code § 20-108. *See Featherstone v. Brooks*, 220 Va. 443, 446-47, 258 S.E.2d 513, 515 (1979) ("the burden rests upon the party seeking to alter the decree to establish [a material change in circumstances] by a preponderance of the evidence"); *Hammers v. Hammers*, 216 Va. 30, 32, 216 S.E.2d 20, 21-22 (1975) (burden is to prove a material change "which justified a reduction in the payments").

Finally, the record reflects that in 1981, at a time when his salary was significantly less than it was in 1985, Yohay, entered into the separation agreement to pay $600 monthly child support even though (i) he had joint custody of his son, (ii) his son might have been spending the majority of his time in Yohay's household, and (iii) Yohay knew that $600 monthly was in excess of the needs of

his son. Also, in accordance with the separation agreement, Yohay was responsible for private school tuition at an annual cost of approximately $3000; at the time of the hearings in 1985, Yohay had been relieved of that financial obligation.

In assessing whether the change in circumstances, especially the significant increase in Yohay's income, had any bearing with respect to "the benefit" of the child and justified a reduction in child support, the judge did not err in giving significant weight to the intent of the parties, as expressed in the 1981 agreement. It was that agreement which initially established the $600 monthly child support and other benefits. Thus, the judge properly viewed the $600 monthly payment within the context of the separation agreement and the parties' 1981 incomes in order to assess whether the request for reduction in payments was justified by the changed circumstances as they existed in 1985.

Moreover, the trial judge did not state that the separation agreement precluded him from exercising his authority under Code § 20-108. *See Featherstone v. Brooks*, 220 Va. 443, 446, 258 S.E.2d 513, 515 (1979) (contract between parties cannot prevent court from exercising authority under Code § 20-108); *Carter v. Carter*, 215 Va. 475, 481, 211 S.E.2d 253, 258 (1975) (separation agreement cannot preclude exercise of statutory authority under Code § 20-108). Rather, the judge found that Yohay failed to prove "that the changes in circumstances, the totality of the change in circumstances of the parties, justifies a reduction in support."

For these reasons I would affirm the decision of the trial judge.