## CIRCUIT COURT OF FREDERICK COUNTY

Cynthia A. Lawhorne Bower

v.

Charles E. Lawhorne

March 14, 1989

Case No. (Chancery) C-87-305

By JUDGE ROBERT K. WOLTZ

This is an appeal from the Juvenile and Domestic Relations District Court on the request of the petitioning mother for the payment of child support by the respondent father. Involved is the effect of three written agreements entered into by the parties on the respondent's child support obligation. There is no claim the agreements are invalid for fraud or other reason. The problem involves construction of the agreements and their application to present circumstances, cast upon the underlying duty of the respondent for child support.

The parties separated in 1984, having two children aged three-and-a-half and one-and-three-quarters years old. In August, 1985, they entered into a separation agreement granting custody to the mother and disposing of various economic matters. By it the respondent was obligated to pay $75 weekly as child support. Provision was made for sale of the marital residence, of which they were joint owners. At the time of sale, the petitioner was to receive $15,000 cash regardless of sale price of

the property. Paragraph 4 provided not only for the $75 weekly child support but also that $10,000 of the $15,000 which the wife was entitled to "shall be in lieu of and offset any further increase in Husband's child support payments for the said children, except as provided in this Agreement, and Wife agrees not to petition for such an increase in child support."

The following November, the parties agreed that the husband would convey all his interest in the marital residence to the wife, that she would pay the deed of trust notes on the property, and that in consideration of his transfer of the real estate, "the Wife shall consider the same as the payment of child support by the Husband to the Wife for the support and maintenance of the children." This agreement also provided that except as modified by this agreement, the August agreement would remain effective.

A third agreement was entered into December, 1985, which related specifically to paragraph 4 covering child support of the August agreement, reciting that this paragraph provided child support would not be increased. Then, as its only substantive provision, this third writing contained an agreement "that Paragraph 4 of said [August] Agreement shall be deleted and shall have no effect." By divorce decree of January, 1986, the first and third of the foregoing agreements were ratified and incorporated into the decree pursuant to Code § 20-109.1. The decree also referred to the provisions of §§ 20-60.3, 20-79.1 and 63.1-250 concerning payment of child support with the provision "that the plaintiff is not requesting periodic child support payments at this time." The decree then referred the case to the Juvenile and Domestic Relations District Court concerning care and custody of the children and modification or revision of the decree under the provisions of § 20-79(c). No mention of the November, 1985, agreement was made in the decree.

In accordance with the second agreement, the husband conveyed his interest in the marital residence to the wife. At that time, the property was subject to deeds of trust totaling $13,124. Twenty-five hundred two dollars is stipulated as the amount expended by the petitioner in maintenance and improvement of the house prior to its

sale. These expenditures are held to be reasonable for the purpose of fixing the property up for sale purposes.

Petitioner then sold the property for $64,000 in May, 1986, taking a note from the purchasers for $58,000 at 9 percent interest, payable $522 per month for 20 years and the balance in cash, which was depleted by payment of real estate commission and other expenses incident to sale. The sale was on the open market within six months of respondent's conveyance of his interest to the petitioner, and there being no other evidence to the contrary, that figure, less the above-mentioned improvements, or $61,498, is found to be the market value of the property at the time of that conveyance.

Petitioner testifies that of the $522 monthly installments she received from the buyers, over 90 percent went to retire an unsecured note for money she used to pay off the balance due on the deeds of trust on the property sold. She also found that she would have to pay on this sale a capital gains tax which she had not contemplated and which the respondent refused to share in upon her request. Under these circumstances, she testified that by May, 1987, she and her hew husband were in financial straits, and in March, 1988, she discounted the $58,000 purchase money note, receiving therefor $51,000. From it she expended $11,000 to pay a bank loan and $30,650 to pay her new mother-in-law respecting the residence of herself and her new husband, including the cost of building a swimming pool.

In response to the petitioner's request for additional child support, the respondent argues that at the time of entering the November, 1985, agreement whereby he conveyed his interest in the marital residence to the petitioner, it was the understanding of the parties that she would sell the property and use the proceeds of sale to support the children. He further points out that the income she received from the buyers on the purchase money note was fully adequate to support the children until reaching majority and that, as a result, while he does not deny the obligation to support his children, he should not be required to make provision for support additional to what he has already done by his conveyance of his interest in the marital residence.

In my opinion, parol evidence of the parties on their intentions in entering the three agreements or their speculations as to future events resulting from those agreements are irrelevant. This is because the writings themselves are not ambiguous and the intent of the parties is discernible from them without evidence *dehors* their four corners. By the first agreement, clearly it was the intent that the husband should pay $75 weekly as cash support for the children. The second agreement, though never ratified by or incorporated into the divorce decree, clearly contemplates that the conveyance by the husband of his interest in the former marital residence was to be considered as payment by him to the wife as child support. The third agreement shows that paragraph 4 of the original agreement providing that child support would not be increased caused the parties to delete paragraph 4 so it would have no effect. Apparently, this third agreement was as a result of the chancellor declining to ratify and affirm the original agreement with the non-increase in child support provision in it.

Both the common and statutory law require a parent to support and maintain minor children. This is a primary duty obviously required by the interests both of the infants and of the public. By § 20-108, trial courts are given continuing jurisdiction to modify their decrees respecting support of minor children where circumstances justify such alteration. Parents by their private contract cannot divest the court of this jurisdiction. *Gloth v. Gloth*, 154 Va. 511 (1930); *Carter v. Carter*, 215 Va. 475 (1975); and *Hammers v. Hammers*, 216 Va. 30 (1975). Though I have found no Virginia case on the point, by the same reasoning, parents could not validly contract away the right of children to support as such an agreement would be against common law, statute, and policy.

Giving effect to the intent of the parties in their agreements, there is nothing which negates either obligation or right to support. Their private effort to settle the support issue is commendable. "When a marriage fails, public policy favors prompt resolution of disputes concerning the maintenance and care of minor children and the property rights of the parties." *Morris v. Morris*, 216 Va. 457, 459 (1975).

The type of resolution reached by the parties is not without its dangers. Child support paid to a mother is for the benefit of the children, and she has a fiduciary responsibility to preserve and expend it for them. Question can be raised in respect of the use of the property interest conveyed to her by the respondent, or rather the net proceeds from its sale, for child support purposes. In fact, to a large extent, they were not so used. Where a custodial parent who receives child support in a lump sum loses it by squandering or unwise investment or by casualty or otherwise, the need of the children for child support remains. If the custodial parent is destitute and unable to bear the burden of support, then the burden may fall upon the non-custodial parent if able to bear it, even though it may mean he has had to pay twice over with perhaps little hope of ever recouping this loss from the custodial parent. The respondent took a risk in this case.

My conclusions are as follows.

(1) The parties agreed to child support at the rate of $75 per week. The effect of the respondent's conveyance of his one-half interest in the marital residence was to discharge this obligation at the rate of $75 per week for each week commencing with the week of November 3, 1985, when he no longer made cash payments.

(2) The value of the interest conveyed by him in satisfaction of child support payments is the $64,000 sale price, less improvements of $2,502, or $61,498, less deed of trust liens of $13,124, giving a net value of $48,374, divided by two, or $24,187. That sum divided by $75 per week equals 322.5 weeks or 6.2 years of child support contribution by him at the agreed rate of $75 per week.

(3) The petitioner is entitled to receive under the circumstances of this case no more than that unless a need therefor can be shown. As no amount of child support payment has ever been decreed, it is not necessary that she show a change of circumstances.

(4) Based on the evidence, I find that a proper amount of child support based on need and financial abilities of the parties would be $100 per week. Seventy-five dollars per week is taken care of for the present by the conveyance of his real estate interest by the respondent as mentioned

above. The $25 is payable in cash to the petitioner retroactive to the first Monday after trial was had until further order. The first payment of increased support shall commence the first Monday after the date of this opinion in the amount of $25, plus $10 per week against the accrued arrearages, for a total of $35 until the arrearages have been discharged, at which time the weekly payments will reduce to $25.