# Richmond

## Susan Dozier Morris, Etc. v. Harry A. Morris, Jr.

December 1, 1975.

Record No. 740987.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*John C. Lowe (F. Guthrie Gordon, III; Lowe & Gordon, Ltd., on brief), for appellant.*

*Harry A. Morris, Jr., pro se.*

Cochran, J., delivered the opinion of the court.

By order entered June 6, 1974, the trial court ruled that certain provisions of a settlement agreement between Susan Dozier Morris

and her former husband, Harry Arthur Morris, Jr., were not incorporated into the final divorce decree, and that the child support payments required of Morris should be reduced. In this appeal Susan has challenged both rulings.

During the pendency of divorce proceedings Susan and Morris executed a settlement agreement dated April 23, 1969. The final decree entered June 17, 1969, in which the trial court granted Susan a divorce *a vinculo matrimonii* from Morris on the ground of voluntary separation for the period of two years, also provided that the court "doth approve, ratify and confirm" the settlement agreement. Custody of their three infant children was awarded to Susan and, under the agreement, Morris was required to pay for the support of each child 8% of his adjusted gross income up to $18,000, and 3% of such income in excess of $18,000, to a maximum of $30,000. He was also required to pay all medical expenses and, subject to a specific limitation on orthodontist expenditures, all dental requirements for the children.

On October 25, 1973, Susan filed a motion for issuance of a rule against Morris to show cause why he should not be held in contempt for failing to comply with the provisions for child support. In his answer Morris denied that he was in default, moved for dismissal of the motion, and moved that the agreement be declared null and void, and that the court, after hearing evidence, determine a proper amount of support for the children.

An evidentiary hearing was held, at which Susan and Morris testified. Susan, who had remarried, lived in Maryland in an $80,000 house with her second husband, Grotz, and her three children. She testified that in 1973 the aggregate amount of her itemized expenditures for the children was $8,153.21, that she earned $2,400 from part-time secretarial work, and that she received $2,800 in investment income. She estimated that, because of inflation, the expenses of the children were greater in 1973 than in 1969, when she earned $3,000 from teaching kindergarten in Albemarle County and received $3,600 in investment income.

Morris, a practicing attorney, had also remarried. He and his wife lived on a farm in Gloucester County with their child and her two children by a previous marriage. Morris testified that in 1973 he earned $21,917, including salary of $18,000 and bonus of $3,700, as against $14,000 in 1969, that he paid to Susan $4,080 for child support, that he paid medical and drug bills for the children in the sum of $789.50, and that he incurred during that year expenses, includ-

ing the child support payments, of $11,604. He had outstanding debts, exclusive of real estate mortgages, of about $850. Morris, conceding that he was slow in paying bills, insisted that he could not pay more than the $100 per month, plus 3% of his adjusted gross income over $18,000, that he was then paying to Susan for the support of each of their three children. Morris testified that, because of the economic recession, the earnings of his law firm had declined during the first three months of 1974, and he doubted that he would receive a bonus over his base salary of $18,000, which, after deductions, would leave him disposable income for the year of about $15,600.

The trial court ruled that the divorce decree of June 17, 1969, incorporated therein by reference the April 23, 1969 agreement, but that, under the court's interpretation of Code § 20-109.1 (Cum. Supp. 1974),[1] such incorporation was operative only as to those provisions the court found to be expressly related to "child custody, visitation and support, or alimony." The court declined to "enforce, interpret or rule upon" the other provisions of the agreement and left these to be enforced by the parties as contractual obligations.

■ This is an unduly narrow construction of Code § 20-109.1. The purpose of the statute is to facilitate enforcement of the terms of an incorporated agreement by the contempt power of the court. *See McLoughlin* v. *McLoughlin,* 211 Va. 365, 368, 177 S.E.2d 781, 783 (1970). When a marriage fails, public policy favors prompt resolution of disputes concerning the maintenance and care of minor children and the property rights of the parties. Voluntary, court-approved agreements promote that policy and should be encouraged. We agree, therefore, with Susan's contention that any provisions of the April 23, 1969 agreement which reasonably relate to the maintenance and care of the children were incorporated into the divorce decree. By this standard the entire agreement was incorporated.

Several of the excluded provisions required Morris to convey or transfer to Susan his interest in the family residence, furniture, furnishings, and automobile. Under paragraph (9) Morris agreed to

---

[1] Code § 20-109.1 (Cum. Supp. 1974) provides in pertinent part:
"Any court may affirm, ratify and incorporate in its . . . decree of divorce . . . any valid agreement between the parties, or provisions thereof, concerning the conditions of the maintenance of the parties, or either of them and the care, custody and maintenance of their minor children. When the court affirms, ratifies and incorporates in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree. The provisions of this section shall apply to any decree hereinbefore or hereinafter entered . . . ."

maintain a $10,000 life insurance policy on his life for the benefit of each child. In paragraph (15) the parties agreed that Morris was entitled to claim the two older children as dependents for income tax purposes, and Susan was entitled to claim the youngest. These provisions reasonably relate to the care and maintenance of the children. Agreements containing similar provisions have been held to be incorporated without question into decrees in other divorce proceedings. *See Carter* v. *Carter*, 215 Va. 475, 477, 211 S.E.2d 253, 255-56 (1975); *Paul* v. *Paul*, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974).

Even the last provision, paragraph (20), in which the contracting parties merely acknowledged having received independent legal advice, reasonably may be considered to have a relationship to child maintenance and care. It evidences an agreement reached after negotiations in which the best interests of the children were necessarily considered with the benefit of dispassionate, professional counsel. Accordingly, we hold that the trial court erred in ruling that the final divorce decree did not incorporate all the provisions of the settlement agreement.

The trial court, "[b]ecause of the change of circumstances of the parties", deleted the provision in paragraph (7) of the settlement agreement that required Morris to pay a percentage of his income for child support and substituted in lieu thereof the requirement that Morris pays $125 per month for each child. Assigning the same reason, the trial court amended paragraph (12)[2] of the agreement to read as follows:

"Wife shall pay ordinary medical and dental expenses, provided however, that Husband shall maintain maximum coverage available on Blue Cross-Blue Shield medical and hospitalization insurance on the infant children of the parties and provide wife with information and assistance necessary properly to file claims for reimbursement for medical expenses incurred which would be covered under those insurance policies. In addition, Husband shall pay one-half of any orthodontist expenses incurred on behalf of or for the children of the parties, and Wife shall pay the other one-half."

[2] Paragraph (12) of the settlement agreement provided:
"Husband does, by his execution of this agreement, agree to pay all medical and dental expenses for the aforesaid children, except that husband's payment of orthodontist expenses for each child shall be limited to a down payment of $250.00 and monthly payments of $35.00;"

■ Under Code § 20-108 the court retains continuing jurisdiction to modify its decree as to the maintenance of minor children, notwithstanding the existence of a contract between the parents. *Carter v. Carter, supra,* 215 Va. at 481, 211 S.E.2d at 258.

In *Hammers* v. *Hammers,* 216 Va. 30, 216 S.E.2d 20 (1975), factually similar to the present case, we reaffirmed the principles to be applied in determining whether child support provisions should be modified. Where, as here, a father seeks a reduction in child support payments because of a material change in his financial condition, the burden is on him to show such a change. He must make a full and clear disclosure of all relevant facts, and he must show that his inability to pay is not due to his own voluntary act or to his neglect. Moreover, the fact that he has remarried and has another family dependent upon him is entitled to little, if any, consideration. *Id.* 216 Va. at 31-32, 216 S.E.2d at 21.

The evidence in *Hammers* disclosed that after entry of the divorce decree the father of the infant children had remarried, had increased his indebtedness, and had fallen in arrears in payment of his income taxes, but that his annual income had increased from $24,000 to $30,000. In reversing the trial court we held that the father had failed to prove that he was entitled to a reduction in child support payments.

In the present case the evidence shows that Morris had increased his indebtedness since his divorce from Susan, and that he has fallen in arrears in child support payments and other obligations, but that his annual income has increased from $14,000 in 1969 to $21,917 in 1973, with an anticipated reduction to $18,000 in 1974. On income of $18,000 his child support payments of 24% under paragraph (7) of the agreement would be $4,320, or $120 per month for each child. Hence, the trial court's modification of this provision would impose on Morris, if his income declined, a heavier burden than the agreement provided, but a lighter burden as his income increased, a result directly contrary to the intent implicit in the agreement. The amendment of paragraph (12), relating to medical and dental expenses, undoubtedly would effect a reduction in payments by Morris, regardless of his income. The question remains, however, whether he is entitled to any reduction.

Morris produced no proof to substantiate his contention that he could not fulfill the child support obligations which he had agreed to assume. Many of his estimated expenditures were directly related to the care and maintenance of the new family which he had ac-

quired. We hold that the evidence is insufficient to show that Morris had suffered a material change in his financial condition justifying modification of the child support payments required of him, and that the trial court erred in amending the settlement agreement.

Accordingly, the order of June 6, 1974, is reversed and the cause is remanded to the court below to take such steps as it may deem advisable to enforce compliance by Morris with the payment provisions of the settlement agreement incorporated into the decree of June 17, 1969.

*Reversed and remanded.*