## CIRCUIT COURT OF FAIRFAX COUNTY

MacNelly

v.

MacNelly

May 24, 1994

Case No. (Chancery) 110893

BY JUDGE MICHAEL P. MCWEENY

This matter is before the Court on Defendant's Rule to Show Cause. After hearing oral argument, the Court took the case under advisement. The Court has now had the opportunity to review the briefs submitted and the authorities cited. For the reasons set forth below, the Court finds that it is precluded from granting the requested set-off for support payments previously made. In addition, the Court denies attorney's fees to either party relating to the referenced Chicago litigation and awards attorney's fees to the Plaintiff relating to the Virginia litigation.

### I. *Rule to Show Cause*

The Defendant/Wife in this matter seeks an order of contempt for the husband's failure to make a lump-sum payment of $100,000, plus interest, as required by section 13(f) of the parties' *Property, Custody and Support Settlement Agreement*, incorporated into the parties' Final Decree of Divorce dated March 30, 1990. The husband does not dispute the agreement's requirement that he make the lump sum payment. Rather, he contends that he has already overpaid the amount due by virtue of support payments made after the Defendant had remarried.

This Court ruled on May 21, 1992, that the parties' agreement required that the support payments continue after the wife's remarriage on December 5, 1991. That holding was reversed by the Court of Appeals in November 1993. The husband submits that any amounts which he might

otherwise have owed to the Defendant under Paragraph 13(f) should be credited against support payments made subsequent to the Defendant's remarriage, or, in the alternative, from the time notice was given of the pendency of the appeal.

The Plaintiff contends first that the instant case involves the enforcement of an existing support obligation by private contract, rather than an award of support or a retroactive modification of support. Therefore, he contends, the Virginia Supreme Court's narrow holding in *Reid v. Reid*, 245 Va. 409 (1993), relied upon by the Defendant, would not control. Second, he argues that statements made by opposing counsel and the judge at the time of the initial hearing in May 1992 contemplated set-off if the appeal were successful. Because his appeal was successful, the Plaintiff argues that fairness requires that he be allowed set-off of payments made in reliance on those statements. Finally, in the interest of fairness and equity, the Plaintiff submits he should be credited in the amount of those payments that have since been determined to have been erroneously paid.

In oral argument, the Plaintiff asserted in the alternative that restitution should be made from the date that notice of the petition for increasing, decreasing or terminating maintenance and support had been given to the responding party pursuant to Virginia Code § 20-112 (Michie's Supp. 1993). He contends that by considering the May 1992 proceedings before this Court to have been in the nature of proceedings to terminate the Defendant's support, the proceeding thus falls within the ambit of § 20-112. This court cannot agree with either contention based upon the Virginia Supreme Court's holding in *Reid v. Reid*, 245 Va. 409 (1993).

Pursuant to the ruling of the Virginia Supreme Court in *Reid*, the trial court does not possess the statutory or inherent authority to order restitution of spousal support paid pursuant to an order that was later reversed. *Reid* at p. 413. The court in *Reid* makes a clear distinction between support orders and other types of judgment, and found that support orders therefore are not always subject to the same body of jurisprudence generally applicable to common law suits and actions. *Id.* Quoting from the case *McCotter v. Carle*, 149 Va. 584, 592 (1927), the court stated, "The many limitations, both in respect to jurisdiction and procedure, placed upon divorce suits by the statute, differentiate the divorce case from ordinary suits in equity and render it a chancery case *sui generis." Reid* at p. 413. The *Reid* court specifically held that the court did not retain inherent authority in this regard, the legislature having modified it. Thus, Plaintiff's

arguments in the case at hand based on fairness and equity would not apply to support payments.

The Court rejects the Plaintiff's argument that the decision based upon the Agreement incorporated into the final decree was no more than an interpretation of a private contract between the parties, and therefore a simple money judgment distinguishable from the circumstances presented in *Reid*. Virginia Code § 20-109.1 (Michie's Supp. 1993) provides that a court may affirm, ratify and incorporate by reference in its decree any valid agreement between the parties and that it shall be deemed for all purposes to be a term of the decree and enforceable in the same manner as any provision of such decree.

The Virginia Court of Appeals in *Mackie v. Hill*, 16 Va. App. 229, 429 S.E.2d 37, 39 (1993), held that any provisions of a settlement agreement incorporated into a divorce decree are deemed, for all purposes, to be part of the decree and enforceable by the contempt power of the court. *See also Morris v. Morris*, 216 Va. 457, 459 (1975); *Rodriguez v. Rodriguez*, 1 Va. App. 87, 334 S.E.2d 595, 596 (1985). Had the terms of the property settlement agreement not been incorporated into the divorce decree, it could have been enforceable as a contract. *Morris*, at p. 459.

In the instant case, there is no dispute that the property settlement agreement between the parties was incorporated into the final decree in its entirety. The support provisions having been incorporated, they constitute an order of the Court and are subject to its contempt powers. Therefore, the initial trial court decision establishing an arrearage for failure to comply with the incorporated terms of the agreement is a support order and not just a simple judgment. The request for a credit is thus controlled by the Virginia Supreme Court's holding in *Reid v. Reid*, disallowing set off for support payments already made.

However, the Court finds that there was no willful disobedience of the Court's order on the part of the Plaintiff in failing to pay the amount set forth in the agreement. Rather, the Court finds that there was a good faith disagreement as to the effect of the Court's ruling, and a finding of contempt is inappropriate. Accordingly, each party will bear their own costs for the fees incurred in arguing the instant Rule to Show Cause.

## II. *Attorney's Fees In Other Litigation*

### A. *Chicago Litigation*

Both parties argue they are entitled to attorney's fees pursuant to the enforcement provision of the Agreement relating to litigation that took

place in Chicago regarding visitation. The agreement provides for visitation "at all reasonable times and under any and all reasonable conditions." *See* Agreement para. 16. The enforcement section, para. 25, provides that if one party incurs expenses in the enforcement of any of the provisions of this Agreement, "the other party shall be responsible for and shall pay immediately upon demand any and all expenses thereby incurred."

This Court finds, however, that the petition brought by Mr. MacNelly in Cook County, Illinois, sought to clarify the vague term "reasonable" in the original agreement, rather than to enforce or modify its terms. In para. 4 of his pleading, styled as an "Emergency Petition for Modification," he states that the parties had been "otherwise unable to agree upon a reasonable visitation schedule for summer and holidays regarding their minor child." His petition was therefore seeking extended uninterrupted visitation during the summer months of 1991 and setting forth a minimum specific visitation schedule.

Because the parties were unable to agree what the term "reasonable" in the agreement entailed, the request for a specific schedule was an attempt to have the court, rather than the parties, define what the term of the agreement encompassed. The action was not brought to force compliance for some sort of breach, as the enforcement term of the Agreement contemplated. Therefore, the Chicago litigation was not an enforcement proceeding, and the motion of the wife and the cross-motion of the husband for attorney's fees are both denied.

## B. *Virginia Litigation*

In addition, the husband is seeking to recover attorney's fees incurred in arguing and then appealing the issue regarding the propriety of support payments after the wife's remarriage. The Fairfax Circuit Court initially held that the agreement provided that the payments would continue after remarriage. That finding was reversed on appeal.

The enforcement provision in para. 25 of the parties' Agreement further provides that "if the party initiating these proceedings is not upheld in court, then he or she will be liable for his or her own expenses, as well as those of the other party." The specific language of the agreement mandates that an award of attorney's fees will be made if the matter is appealed and reversed. The Agreement provides that "expenses" shall include, but shall not be limited to, reasonable attorney's fees, court costs, and expenses of travel to a court of competent jurisdiction. Therefore the husband's request

for attorney's fees for the Virginia litigation is granted in the amount of $37,691.50.