COURT OF APPEALS OF VIRGINIA


Present:  Judge Annunziata, Senior Judges Duff and Hodges
Argued at Alexandria, Virginia


ROBERT JOHN RIGGINS
                                            OPINION BY
v.    Record No. 2297-99-4        JUDGE ROSEMARIE ANNUNZIATA
                                       DECEMBER 12, 2000
MARY LOUISE O'BRIEN


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Jonathan C. Thacher, Judge
                    Kathleen H. MacKay, Judge

            Jerry M. Phillips (Phillips, Beckwith, Hall &
            Chase, on briefs), for appellant.

            Elizabeth D. Teare (Surovell, Jackson,
            Colten & Dugan, P.C., on brief), for
            appellee.


     Robert John Riggins appeals two decisions of the circuit

court, one finding him liable to Mary Louise O'Brien for

$106,137.99 in past due child support and interest under the

parties' support agreement and the other setting the amount of

ongoing monthly child support.  Riggins contends the trial court

(1) erred in interpreting the child support provisions of the

final decree of divorce entered June 12, 1991; (2) erred in

finding that the parties did not renegotiate child support

pursuant to the provisions of the final decree; (3) abused its

discretion in refusing to impose monetary sanctions for O'Brien's

civil contempt in relocating the minor children without permission

of the court; (4) erred by severing the issue of the ongoing child

support payments; (5) erred by granting a non-suit of O'Brien's petition for modification of child support and visitation despite Riggins's pending interrelated issues; (6) erred by not considering the Code § 20-108.1 factors when setting child support; and (7) erred by modifying the final decree of divorce to change the emancipation date for termination of child support. Riggins also seeks appellate attorney's fees. For the reasons that follow, we affirm the trial court's rulings.

BACKGROUND

The parties married in 1974. After almost fifteen years of marriage and four children, they separated in 1989. Under a property settlement agreement signed by the parties on June 10, 1991, they resolved their outstanding property distribution issues. They did not resolve the issues of custody, visitation or child support, and a hearing on those issues was scheduled for June 12, 1991. However, prior to the start of the hearing, the parties reached an oral agreement on those issues. The terms of their agreement as to child support, custody and visitation were set out only in the final decree of divorce, entered June 12, 1991, which provided in pertinent part:

> ADJUDGED, ORDERED and DECREED, by agreement of the parties, that the Cross-Plaintiff, ROBERT JOHN RIGGINS, as and for the support and maintenance of the parties' minor children, shall pay unto the Plaintiff, MARY LOUISE RIGGINS, the sum of Three Thousand Two Hundred Fifty Dollars ($3,250.00) per month on the first day of each month hereafter, commencing on July 1, 1991, and continuing

-

> thereafter until said children shall attain the age of eighteen (18) years, marry, become self-supporting, become otherwise emancipated, or die, whichever should first occur, there being no existing arrearages as of June 12, 1991; provided, however, that the amount payable hereunder shall be renegotiated or submitted to a court for adjudication on the first event of emancipation, as set forth above, as to each child . . . .

Riggins made the agreed child support payment each month until August 1992, when the parties' eldest child reached the age of eighteen. Riggins testified that he then wrote a letter to O'Brien, indicating that he was reducing the amount of child support by one-quarter, pursuant to the parties' agreement. O'Brien testified that there was no "re-negotiation" of the amount of child support nor was the amount submitted to the court. However, it was uncontested that O'Brien did not object to the reduced amount of child support and continued to receive the monthly payments for over six years without voicing any objection.

In addition, in 1994, following her remarriage, O'Brien moved to Kansas with the children. Riggins testified that he first learned about the pending relocation from his children less than a month before the move took place. Riggins subsequently relocated to New York in February 1995. The majority of the expenses for visitation were borne by Riggins.

In 1996, the parties' second oldest child, a daughter then age sixteen, left high school and moved into a condominium with two young men. Riggins notified his daughter and O'Brien that he

-

would not pay child support for his daughter under those conditions, as he considered her emancipated. Riggins made a corresponding reduction in the amount of his monthly child support.

In October 1998, O'Brien filed a petition for a rule to show cause alleging that Riggins was in contempt for his failure to pay $3,250 in monthly child support since 1992. Riggins also filed a petition for a rule to show cause, alleging that O'Brien's relocation to Kansas violated the provision for joint custody. A hearing on these two issues, plus the issue of prospective child support, was set for March 15, 1999. On the March 12, 1999 motions day, O'Brien moved to non-suit her petition to modify child support, which the presiding judge granted. In order to keep the determination of child support on the docket for the March 15, 1999 hearing, Riggins filed his own petition seeking modification of child support and visitation. At the hearing, however, Judge MacKay ruled that O'Brien's non-suit removed the issues of child support modification and visitation from the proceeding. After receiving the evidence, Judge MacKay issued a final decision on September 15, 1999, finding Riggins liable for $85,332.94 in child support arrearage and $20,805.05 in pre-judgment interest. On August 30, 1999, following a hearing on May 3, 1999, Judge Thacher issued a final decision setting the amount of child support. Riggins appealed both decisions.

-

## I. and II.  Renegotiation of Child Support

In our opinion, the issue of whether the parties renegotiated the child support upon the eldest child reaching majority and again upon the daughter quitting high school and moving out of her mother's home is not dispositive of the legal issues presented.

Although "public policy favors prompt resolution of disputes concerning the maintenance and care of minor children," Morris v. Morris, 216 Va. 457, 459, 219 S.E.2d 864, 867 (1975), any such agreements for support, either established at the time of divorce, or for modification post-divorce, must be reviewed and approved by a court of law.  Id. at 461, 219 S.E.2d at 867 ("[T]he court retains continuing jurisdiction to modify its decree as to the maintenance of minor children, notwithstanding the existence of a contract between the parents."); Scott v. Scott, 12 Va. App. 1245, 1249, 408 S.E.2d 579, 582 (1991) ("[A]greement[s] between husband and wife cannot prevent the court from exercising its power to make and modify child support awards.").

Following the Virginia Supreme Court's decision in Morris, we held in Goodpasture v. Goodpasture, 7 Va. App. 55, 371 S.E.2d 845 (1988), that "[p]arties cannot contractually modify the terms of a support order without the court's approval. . . . Should circumstances change requiring alteration in the amount of support, a party's remedy is to apply to the court for relief."  Id. at 58, 371 S.E.2d at 847; see also Kelley v. Kelley, 248 Va. 295, 298, 449 S.E.2d 55, 56 (1994).  Indeed, we

-

have approved specific procedures to be followed by the trial court in its determination of whether to ratify, affirm and incorporate an agreement which sets child support.  In Watkinson v. Henley, 13 Va. App. 151, 409 S.E.2d 470 (1991), we held that the agreed amount must be evaluated relative to the factors set forth in Code § 20-108.1 as follows:

> [W]here parents have agreed upon an amount, or agreed upon other provisions, for the support and maintenance of a child, the trial court must consider the provisions of the agreement, that relate to the factors in Code §§ 20-107.2 and 20-108.1 [now contained exclusively in § 20-108.1], in deciding whether the presumptive amount would be unjust or inappropriate in a particular case.  In so doing, the trial court must consider whether the agreed provisions for the child would better serve the interest or "equities" for the parents and children. Code § 20-107.2(2)(h) [now § 20-108.1(B)(18)].  The best interest of the child or children is the paramount and guiding principle in setting child support, whether it be adopting the presumptive amount, calculating an alternate sum after the presumptive amount has been rebutted, ordering the amount agreed upon between the parents, or approving, ratifying and incorporating, in whole or in part, the child support provisions of a contract. Furthermore, we hold that if the trial court finds that the presumptive amount is unjust or inappropriate because the provisions in a separation agreement serve the best interest of the child, the court may vary from the guidelines by ordering support be paid in an amount equal to the benefits provided for in the contract.  Alternately, the court may, rather than judicially set support, elect to affirm, ratify and incorporate by reference the agreement between the parties, or any provisions thereof, concerning the maintenance and support of the minor

-

> children, or establish or impose any other
> condition or consideration, monetary or
> nonmonetary.

Id. at 158-59, 409 S.E.2d at 474 (citations omitted). Accord

Spagnolo v. Spagnolo, 20 Va. App. 736, 460 S.E.2d 616 (1995)

(reversing the trial court's failure to follow the parties'

agreement, where the record indicated that the trial judge

failed to adequately consider the best interests of the child,

as the judge neither considered the entire package of benefits

available to the child as set forth in the support agreement nor

compared the relative merits of the support agreement to the

statutory support guideline amount).

Because the "best interest of the child . . . is the

paramount and guiding principle in setting child support,"

Watkinson, 13 Va. App. at 158, 409 S.E.2d at 474, the need for

court approval of agreements reached by the parties to modify

the amount of support to be paid has neither been eliminated

from the paradigm established for determination of child

support, nor has it been subordinated to contract principles or

public policy considerations in favor of the resolution of

disputes by the parties themselves. See Featherstone v. Brooks,

220 Va. 443, 446, 258 S.E.2d 513, 515 (1979) ("Code § 20-108

gives the divorce court continuing jurisdiction to change or

modify its decree concerning the custody and maintenance of

minor children, and a contract between husband and wife cannot

prevent the court from exercising this power." (citation

-

omitted)).  Furthermore, the principle is applicable to the

court's consideration of the child support amount established

both by agreements reached in conjunction with divorce and

post-divorce.  See id.; Watkinson, 13 Va. App. at 158-59, 409

S.E.2d at 474; see also Acree v. Acree, 2 Va. App. 151, 342

S.E.2d 68 (1986).[1]  There is no principled basis upon which to

conclude that where the law requires a judicial determination of

the best interests of the child initially, that such a

determination is no longer necessary when a change is sought, by

whatever means.

In Acree, we made clear that where only the form or method

of the child support payment, and not the amount, is modified by

agreement of the parties, such modification may be proper and

court approval may be obtained post facto.  In such cases, the

total amount of support to be paid has not been modified, and

subsequent court approval of the change does not constitute an

improper retroactive modification of the child support payment

---

[1] In Acree, we held that "[b]ecause of the unique facts" of
that case, the father should be awarded credit for his
non-conforming payments.  2 Va. App. at 152, 342 S.E.2d at 68.
We found that the father had not altered the amount of support
that he had paid, but rather he had altered the method of
payment.  We noted that "[t]he agreement of the parties as
carried out worked to the benefit of the child to the same
degree as absolute conformity with the terms of the decree would
have."  Id. at 158, 342 S.E.2d at 72.  Here, the parties
modified the amount of the award, not merely the method of
payment, and it cannot be said the new agreement worked to the
benefit of the remaining minor children "to the same degree as
absolute conformity with the terms of the decree would have."

-

decreed.  See Acree, 2 Va. App. at 157-58, 342 S.E.2d at 71; see also Code § 20-108.

In the instant case, even if the parties modified by agreement the amount to be paid in support of the minor children, upon the emancipation of two of their children, their agreement resulted in diminished child support payments to the minor children who remained in the mother's custody.  Such a reduction in support by agreement, without the court's approval, is in clear contravention of Virginia law and public policy. Goodpasture, 7 Va. App. at 59, 371 S.E.2d at 848 (to allow the parties to modify by agreement the amount of support owed without prior court approval "would substitute the self-determined interests of one or both of the parents over the court-determined best interests of the child"); see also Cofer v. Cofer, 205 Va. 834, 838, 140 S.E.2d 663, 666 (1965); Bennett v. Commonwealth, 22 Va. App. 684, 696, 472 S.E.2d 668, 674 (1996); cf. Acree, 2 Va. App. 151, 342 S.E.2d 68.  Thus, unlike the parties in Acree, the parties in this case modified the amount of the award, not merely the method of payment.  As such, we cannot say that the new agreement reducing support worked to the benefit of the remaining minor children "to the same degree as absolute conformity with the terms of the decree would have." Acree, 2 Va. App. at 158, 342 S.E.2d at 72.

It is contended that because the divorce decree itself incorporated the parties' agreement and ordered that such

-

prospective modifications of child support were to be "renegotiated," any resulting modification is consistent with the court's final order and is, therefore, proper. We disagree. In our judgment, such an order is violative of Code § 20-108[2] and is, therefore, ineffective. Not only does the order purport to allow retroactive reduction of the child support amount by agreement of the parties in the absence of court review and approval, it contravenes an equally important principle of law which makes invalid a prospective modification of child support. See Keyser v. Keyser, 2 Va. App. 459, 345 S.E.2d 12 (1986). As we stated in Keyser:

> [N]eeds and capacities change as circumstances change and [] these changes are not always fairly predictable. Determination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur.
>
>        \*      \*      \*      \*      \*      \*      \*

---

[2]     The court may, from time to time after decreeing as provided in § 20-107.2 . . . revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require. . . .

       \*      \*      \*      \*      \*      \*      \*

    No support order may be retroactively modified . . . .

Code § 20-108.

-

> The statutory scheme provided by the General Assembly does not contemplate automatic changes or escalator clauses.

Id. at 461-62, 345 S.E.2d at 13-14 (citations omitted).

In short, whether the court's decree is seen as one which allows the parties to retroactively modify the child support amount by agreement, or do so prospectively, in our judgment, such a decree is void and ineffective. Kelley, 248 Va. at 299, 449 S.E.2d at 57 ("[T]he rights of children to support and maintenance . . . cannot be impinged by contract, and any contract purporting to do so is facially illegal and void. . . . [A] void judgment may be attacked and vacated in any court at any time, directly or collaterally.").

### III. Refusal to Grant Monetary Sanctions

For the reasons set out more fully in our memorandum opinion in O'Brien v. Riggins, No. 2421-99-4 (Va. Ct. App. Dec. 12, 2000), we find that the trial court abused its discretion in finding O'Brien guilty of civil contempt for her relocation to Kansas in 1994. There was no express prohibition on relocation in the parties' final decree of divorce, nor was there an express requirement that the parties notify each other or the court in writing thirty days prior to any planned relocation. Code § 20-124.5, which requires the inclusion of such a condition in each order of custody or visitation, was enacted in 1994, well after the entry of the parties' decree. Therefore, the trial court abused its discretion in finding O'Brien in contempt.

-

Accordingly, we find no abuse of discretion in the trial court's refusal to grant Riggins greater monetary sanctions against O'Brien.

## IV. Severance

Riggins contends the trial court erred by permitting a severance of the child support issues from the other issues. As noted below, Riggins did not appeal the trial court's decision granting O'Brien's non-suit. The record demonstrates that the trial court did not sever the issue, but refused Riggins's request to consolidate his newly-filed petition for determination of child support with the pending contempt proceedings. We find no reversible error in the trial court's refusal to consolidate these matters into a single hearing.

## V. Non-suit

Riggins also contends the trial court erred when it granted O'Brien's voluntary non-suit. Code § 8.01-380(A) and (B) provide that a party may take one timely-filed non-suit as a matter of right. See generally Nash v. Jewell, 227 Va. 230, 315 S.E.2d 825 (1984). We find Riggins is procedurally barred from pursuing this issue because he did not appeal the trial court's order granting the non-suit within thirty days after its entry. See Rule 5A:6.

## VI. Code § 20-108.1 Factors

Riggins contends the trial court erred by failing to consider the statutory factors contained in Code § 20-108.1(B) when setting child support. We find no error.

-

The determination of child support is a matter of discretion for the trial court, "and such awards will not be reversed on appeal unless plainly wrong or unsupported by the evidence." Although the amount of child support called for by the guidelines set forth in Code § 20-108.2 is presumptively correct, this presumption may be rebutted . . . .

Ragsdale v. Ragsdale, 30 Va. App. 283, 295, 516 S.E.2d 698, 703 (1999) (citations omitted). The statute provides that "[i]n order to rebut the presumption, the court shall make written findings in the order, which findings may be incorporated by reference, that the application of such guidelines would be unjust or inappropriate in a particular case." Code § 20-108.1(B); see Richardson v. Richardson, 12 Va. App. 18, 21, 401 S.E.2d 894, 896 (1991).

We find no error in the trial court's decision to rely only on evidence arising during 1998 or later as that most relevant to the parties' current circumstances for purposes of calculating prospective child support. Based upon the relevant evidence, the trial court deviated from the guideline amount by imputing additional income to O'Brien, based upon her most recent earnings. See Code § 20-108.1(B)(3). We find no error in the trial court's refusal to further deviate from the guidelines on the basis of unspecified amounts of capital gains allegedly received by O'Brien upon the sale of her residence. See Code § 20-108.1(B)(7). We also find no error in the trial court's refusal to include as income amounts O'Brien received in previous years from her

-

husband.  Cf. <u>Orlandi v. Orlandi</u>, 23 Va. App. 21, 29, 473 S.E.2d 716, 722 (1996).

Evidence supports the trial court's refusal to deviate from the guidelines on the basis of certain contributions made by Riggins to Uniform Gift to Minor accounts held for his children. These accounts, which were not controlled by Riggins, were not "independent financial resources" of the children.  <u>See</u> Code § 20-108.1(B)(9).

The trial court was not required to deviate from the presumptive amount based upon certain taxes paid in full by Riggins in 1998.  <u>See</u> Code § 20-108.1(B)(18).  Similarly, the trial court was not required to deviate from the presumptive amount based upon support paid by Riggins for the daughter of his new family.  <u>See</u> Code § 20-108.1(B)(1).  A trial court may, but is not required to, consider support paid for a new family when the failure to do so would render application of the guideline amount "unjust or inappropriate."  Finally, the trial court did not err in failing to consider unspecified amounts of "relocation expenses" paid by Riggins, particularly in light of the fact that the trial court ruled that O'Brien would bear the transportation costs of future visitation.

## VII.  Improper Modification of Decree

We find no merit in Riggins's contention that the trial court erred by modifying his child support obligations to provide for the parties' two younger children until the age of nineteen,

-

pursuant to the provisions of Code § 20-124.2.  No contract between the parties can deprive children of the support to which they are entitled by law.  See <u>Kelley</u>, 248 Va. at 298, 449 S.E.2d at 56.

VIII.  Appellate Attorney's Fees

We decline the parties' requests for an award of appellate attorneys' fees.  <u>See</u> <u>O'Loughlin v. O'Loughlin</u>, 23 Va. App. 690, 479 S.E.2d 98 (1996).  Accordingly, the decree appealed from is affirmed.

<u>Affirmed.</u>