542 S.E.2d 9

**Francis E. SHOUP**

**v.**

**Heidi S. SHOUP.**

**Record No. 0098-00-4.**

Court of Appeals of Virginia,
Alexandria.

Feb. 27, 2001.

Betty A. Thompson, Arlington (David M. Levy; Surovell, Jackson, Colten & Dugan, Fairfax, on brief), for appellant.

Valerie Szabo (Valerie Szabo, P.L.L.C., on brief), Arlington, for appellee.

Present: FITZPATRICK, C.J., BENTON and ANNUNZIATA, JJ.

ANNUNZIATA, Judge.

Francis E. Shoup ("father") appeals from the judgment of the Circuit Court of Fairfax County finding him in arrears for child support payments in the amount of $33,838.20, plus interest, as well as attorney's fees and costs. The court also found father in contempt. He contends the trial court erred: (1) by disregarding the emancipation of two of the parties' children in computing arrearages; (2) in finding him in contempt and ordering him to pay arrearages accruing after September, 1995, given evidence that he had paid an amount equivalent to what he owed according to the Virginia support guidelines; (3) in finding that the parties' agreement concerning modification of child support was self-executing as to

changes in child-care costs, but was not self-executing upon the emancipation of a child; (4) by declining to enforce the parties' purported self-executing agreement on child support modification; and (5) in awarding attorney's fees to Heidi S. Shoup ("mother").

The mother appeals the trial court's award of credit to the father for child-care costs. The mother alleges the trial court erred: (1) by awarding a credit to the father for child-care costs in the absence of a request for such a credit; (2) in retroactively crediting child-care costs when the child support award had not been modified; and (3) in determining that mother had conceded the issue of child-care expenses.

We affirm the order in part, and reverse, in part.

## BACKGROUND

The parties were divorced by a final decree of divorce entered by the Fairfax County Circuit Court on September 1, 1994. At the time of the divorce, the parties had three minor children: Allison Elliot Shoup, born November 30, 1977; Francis Elliot Shoup, IV, born June 8, 1979; and Kyle A.M. Shoup, born June 20, 1985. The final divorce decree incorporated the parties' June 27, 1994 Custody, Support and Property Settlement Agreement.[1] In accordance with the parties'

---

1. The incorporated agreement provided, in relevant part:
 5. *SUPPORT AND MAINTENANCE OF THE CHILDREN*
 a. The Husband shall, ... pay directly to the Wife the monthly base support amount of Two Thousand One Hundred and Seventy Seven Dollars ($2,177.00) per month, for the support and maintenance of the children of the parties.... This amount is the sum calculated for child support as [is] required by Section 20–108.2 of the Code of Virginia (1950, as amended), pursuant to the worksheet attached as Attachment A to this agreement....
 * * * * * * *
 c. The parties agree that they shall split, in the same proportion as their annual gross incomes bear to their annual combined gross incomes, as calculated in Attachment A of this Agreement or as modified by a court in the future, any child care costs incurred on behalf of the children due to the employment of the custodial parent. The Wife shall notify the Husband of any change in the amount of the child care costs. In the event that child care costs rise in a month,

agreement, the final decree ordered the father to pay $2,177 per month in child support to the mother. The decree also provided for a proportionate division of certain medical expenses and for reimbursement of child-care costs based on the parties' relative annual gross incomes as calculated in the support guideline worksheet, Attachment A to the agreement.

The oldest child, Allison, graduated from high school in June, 1995 and turned eighteen years of age on November 30, 1995. Beginning in October, 1995, the father unilaterally reduced the amount of support by approximately one-third to $1,452 per month. Also beginning in October, 1995, child-care costs were no longer incurred. The second child, Elliot, graduated from high school in May, 1997 and turned eighteen in June, 1997. Beginning in June, 1997 the father again unilaterally reduced the amount of support by another one-third to $764 per month. Although the father unilaterally reduced the amount of support paid on each of these two occasions, the record shows that the mother did not object until she filed the present suit to collect the arrearages.

---

the Husband shall be responsible for reimbursing the Wife on the first day of the next month for his proportionate share of such increases. In the event that child care costs decline in a month, the Wife shall notify the Husband who shall reduce his payment of child care costs on the first day of the next month by his proportionate share of such decline. Upon request by the Husband, the Wife annually will provide the Husband with a copy of canceled checks, tax deposits and such other information as Wife may maintain documenting the payment of child care costs for the period for which said information is requested.

d. The Husband shall make consecutive monthly installments of the child support on the first day of each month until each child dies, marries, becomes self-supporting, reaches the age of eighteen (18) years or otherwise becomes emancipated, whichever event first occurs, except that support shall continue to be paid for a child if he or she is a full-time high school student, not self-supporting and living in the home of the residential custodian, until he or she reaches the age of nineteen (19) years or graduates from high school, whichever first occurs.

e. If there is any change in circumstances, the parties shall follow the child support guidelines contained in § 20–108.2 of the Code of Virginia or its successor statute and any other relevant Virginia statutes and case law for determination of child support.

On April 13, 1999 the mother filed a petition for a rule to show cause against the father for failing to pay $2,177 per month in child support. The matter was heard on June 24, 1999. In its letter opinion dated October 30, 1999, the trial court found the father to be in contempt of court and found that he was in arrears as to the support amount contained in the final decree from October, 1995 through May, 1999. Based on the parties' agreement as incorporated into the final decree, the trial court also awarded father a credit for his payments of child-care expenses that had not been incurred by the mother. The trial court entered an order dated December 7, 1999 finding the father in contempt and entered judgment against the father in the principal sum of $33,838.20, with interest running at the judgment rate. It also awarded mother her attorney's fees.

## ANALYSIS

### I.

### *Automatic Reduction in Support upon Emancipation*

█ The father contends the trial court erred in holding him in contempt. He argues that the terms of the final divorce decree and incorporated property settlement agreement permitted him to automatically reduce his child support payments when each child reached the age of eighteen and graduated from high school. We disagree.

█ Because the "best interest of the child or children is the paramount and guiding principle in setting child support," *Watkinson v. Henley*, 13 Va.App. 151, 158, 409 S.E.2d 470, 474 (1991), the court must approve modifications to the amount of support at the time the modification is made. *See Cofer v. Cofer*, 205 Va. 834, 838, 140 S.E.2d 663, 666 (1965); *Bennett v. Commonwealth*, 22 Va.App. 684, 696, 472 S.E.2d 668, 674 (1996); *Goodpasture v. Goodpasture*, 7 Va.App. 55, 58–59, 371 S.E.2d 845, 847–48 (1988). As we noted in *Goodpasture*, modifications by agreement without prior court approval "substitute the self-determined interests of one or both of the parents over the court-determined best interests of the child." *Goodpasture*, 7 Va.App. at 59, 371 S.E.2d at 848.

█ The emancipation of a child does not constitute an exception to Virginia's decisional law that precludes the court from ordering modification of support prospectively and without its approval. The rule applies even when the emancipation of one child is the proposed catalyst for the modification by agreement, except in one well defined circumstance not applicable here. When an undivided child support award has been made for multiple minor children, the emancipation of a child, except the last remaining in custody, does not permit automatic termination or modification of support. *See Eaton v. Eaton,* 215 Va. 824, 828 n. 3, 213 S.E.2d 789, 792 n. 3 (1975); *see also* S.R. Shapiro, *Propriety and Effect of Undivided Award for Support of More than One Person,* 2 A.L.R.3d 596, § 5 (1965 & Supp.2000).[2] Although under *Eaton,* the court's jurisdiction to enforce support awards ends with the child's majority or emancipated status, *Eaton* does not stand for the general proposition that a child support award addressing the needs of multiple minor children may be automatically and either unilaterally, or by agreement, modified without court approval upon emancipation. *Eaton,* 215 Va. at 826, 213 S.E.2d at 791.[3]

█ The prevailing and well-established principle of law requiring contemporaneous court approval of modifications has not been diminished or eroded by the Commonwealth's

---

**2.** As noted in the A.L.R. article, only one state of the nineteen that have addressed this issue has allowed an automatic or agreed modification of support, upon the emancipation of the oldest child, absent court approval at the time the modification is made.

**3.** In *Eaton,* the Supreme Court held that an order for the payment of support to the parties' sole minor child "ceased to be effective at majority without a judicial act." *Id.* at 828, 213 S.E.2d at 792. The Court's *caveat* to the holding is of greater consequence to the issue in this case, however. The Court noted, "[t]his suit does not involve a lump sum award for several children of different ages.... In such cases, a judicial proceeding at majority may be necessary to establish the extent of the parent's liability." *Id.* at 828 n. 3, 213 S.E.2d at 792 n. 3; *see also* 2 A.L.R.3d 596, § 5. *Eaton* is thus limited to cases in which a sole minor child becomes emancipated.

public policy favoring "prompt resolution of disputes concerning the maintenance and care of minor children." *Morris v. Morris,* 216 Va. 457, 459, 219 S.E.2d 864, 867 (1975). The parties cannot by agreement limit or terminate the court's jurisdiction to make and modify child support awards. *See Scott v. Scott,* 12 Va.App. 1245, 1249, 408 S.E.2d 579, 582 (1991) ("[A]greement[s] between husband and wife cannot prevent the court from exercising its power to make and modify child support awards."); *see also Featherstone v. Brooks,* 220 Va. 443, 446, 258 S.E.2d 513, 515 (1979) ("Code § 20–108 gives the divorce court continuing jurisdiction to change or modify its decree concerning the custody and maintenance of minor children, and a contract between husband and wife cannot prevent the court from exercising this power."). "Should circumstances change requiring alteration in the amount of support, a party's remedy is to apply to the court for relief." *Goodpasture,* 7 Va.App. at 58, 371 S.E.2d at 847; *see also Kaplan v. Kaplan,* 21 Va.App. 542, 548, 466 S.E.2d 111, 114 (1996) (quoting Code § 20–108).

 Father nevertheless contends that, because the agreement was incorporated into the decree, the court was bound to enforce the parties' agreement permitting modification of child support without court approval. To be sure, "incorporation of the [child support] agreement . . . into the decree render[s] the terms of the agreement so incorporated enforceable as a decree of the court." *Fry v. Schwarting,* 4 Va.App. 173, 179, 355 S.E.2d 342, 345 (1987). However, a decree that incorporates an agreement permitting automatic, unilateral, or agreed upon modification of support without prior court approval is a legal nullity and void. *Kelley v. Kelley,* 248 Va. 295, 298–99, 449 S.E.2d 55, 56–57 (1994) (because "parents cannot contract away their children's rights to support," any provision which impinges upon the right of children to support is void, and a decree which incorporates such provision is likewise void); *see also Riggins v. O'Brien,* 34 Va.App. 82, 538 S.E.2d 320 (2000).[4]

---

**4.** This case is distinguishable from those in which the parties, by agreement, establish an obligation to provide support beyond the child's

Furthermore, father's position that the terms of the final decree itself permitted automatic modification of the child support award upon the emancipation of each child also fails to consider that, under Virginia law, the court cannot order prospective modification of child support upon the occurrence of a future event. *See Solomond v. Ball,* 22 Va.App. 385, 470 S.E.2d 157 (1996) (reversing support decree which ordered father to pay a percentage of children's education expenses, rather than a specific amount); *Keyser v. Keyser,* 2 Va.App. 459, 345 S.E.2d 12 (1986) (reversing support decree which provided for automatic increase or decrease in father's obligation according to the percentage increase or decrease of his annual income). As we have stated:

> [N]eeds and capacities change as circumstances change and [ ] these changes are not always fairly predictable. Determination of support awards must be based on contemporary circumstances and modified in the future as changes in circumstances occur.

> \* \* \* \* \* \* \* \*

> The statutory scheme provided by the General Assembly does not contemplate automatic changes or escalator clauses.

*Keyser,* 2 Va.App. at 461–62, 345 S.E.2d at 13–14; *see also Solomond,* 22 Va.App. at 392–93, 470 S.E.2d at 160 ("A trial court may not abrogate its responsibility to determine that a material change of circumstance justifies a modification of child support by entering an order that results in an automatic increase in the support obligation upon the occurrence of future events.").

---

age of majority. In those cases, the court has the authority to enforce the agreement. *See, e.g., Fry,* 4 Va.App. at 180, 355 S.E.2d at 345–46 (where parties contract to extend child support obligation beyond majority and agreement is incorporated into decree, court retains jurisdiction to enforce agreement); *Hershey v. Hershey,* 57 N.C.App. 692, 292 S.E.2d 141 (1982) (court enforced parties' agreement which provided that father would provide support beyond the age of majority).

Finally, father's argument that the trial court's award of arrearages constituted an improper enforcement of support for an emancipated child misapprehends the central issue presented here: a reduction in support based on the emancipation of a child in cases where an undivided support award has been made for several children, some of whom remain minors, *must be consistent with the best interests of the remaining minor children.* The latter determination lies solely within the jurisdiction of the court, and numerous factors, including but not limited to the presumptive guideline amount, are to be considered by the court in making that determination. *See* Code §§ 20–108.1, 20–108.2; *Keyser,* 2 Va.App. at 461, 345 S.E.2d at 13. Whether the reduction in support for the remaining minor child, made unilaterally by the father in this case, was consistent with the best interests of the child has never been addressed by a court of law.

In short, neither the parties' agreement nor the decree incorporating it, purporting to establish a mechanism for one or both parties to modify child support without prior court approval, provides a legal underpinning for the father's contention on appeal that the trial court erred in finding him in contempt of its prior order governing his support obligation. The father failed to seek relief from the court in modifying the child support award set forth in the final decree of divorce and improperly reduced his support payments to the mother.[5] Accordingly, we find that the court did not err in finding him in contempt and, with the exception discussed below, we affirm the court's award of arrearages.

## II.

### *Reimbursement of Child Care Costs*

When determining the amount of child support to award, the trial court is authorized to consider child-care expenses and include in the support award an appropriate

---

5. We note that the mother's acquiescence in the reduction is irrelevant. *Goodpasture,* 7 Va.App. at 58, 371 S.E.2d at 847.

amount reflecting those costs. *See* Code §§ 20–108.1(B)(8), 20–108.2(F), 20–108.2(G)(3)(b). · By virtue of the statutory scheme adopted by the legislature, conceptually and, in fact, child-care payments are a form of child support. In this case, the court ordered the father to pay $2,177 per month in child support. The award included the costs for child-care as determined at the time of the hearing. Notwithstanding the court's decree by which child-care costs were ordered payable as part of the child support award, the parties' agreement as incorporated into the decree also provided that upon notification by mother of any change in the child-care expenses incurred, the father's payment of child-care costs would be increased or decreased accordingly.

Based on the reasoning and legal principles discussed earlier governing the modification of support, we find this provision of the agreement and decree to be inconsistent with Virginia law and void as against public policy. *See Goodpasture,* 7 Va.App. at 58, 371 S.E.2d at 847; *Solomond,* 22 Va.App. at 392–93, 470 S.E.2d at 160; *Keyser,* 2 Va.App. at 461–62, 345 S.E.2d at 12–14. When faced with a change in the circumstances underlying the court's award of child support, the parties' remedy is to petition the court for modification. *Goodpasture,* 7 Va.App. at 58, 371 S.E.2d at 847. The father failed to petition and obtain an award modifying the prior child support award in light of the reduction in child-care costs incurred by the mother. Thus, no credit for overpayment of support was warranted, and none is permitted under Virginia law. The court, therefore, erred in reducing the amount of arrearages owed by the father in consideration of the reduced child-care expenses incurred by the mother. Granting the credit constituted an improper retroactive modification of support. *See* Code § 20–108; *Goodpasture,* 7 Va.App. at 58, 371 S.E.2d at 847; *Cofer,* 205 Va. at 838, 140 S.E.2d at 666 ("[P]ayments exacted by the original decree of divorce become vested as they accrue and the court is without authority to make any change as to past due installments."). We, therefore, reverse the trial court's ruling which gave father a credit

for payments he made for child-care costs and enter judgment for the total amount of arrearages due.

## III.

### Attorney's Fees

Finally, the parties' agreement provided that the losing party in an enforcement action shall bear the other party's attorney's fees, and the trial court, in its discretion, determined a reasonable award. Because we find that the trial court did not abuse its discretion, we affirm the trial court's award of attorney's fees to mother. *Graves v. Graves*, 4 Va.App. 326, 333, 357 S.E.2d 554, 558 (1987).

*Affirmed in part, reversed in part.*

BENTON, Judge, dissenting.

In pertinent part, Code § 20–109.1 provides as follows:

Any court may affirm, ratify and incorporate by reference in its decree dissolving a marriage ... any valid agreement between the parties, or provisions thereof, concerning ... the care, custody and maintenance of their minor children, or establishing or imposing any other condition or consideration, monetary or nonmonetary. Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree.

Applying this statute, we have held that "[i]ncorporation of the [child support] agreement ... into the decree rendered the terms of the agreement so incorporated enforceable as a decree of the court." *Fry v. Schwarting*, 4 Va.App. 173, 179, 355 S.E.2d 342, 345 (1987). We have also held that the statute "does not mandate the court to incorporate the agreement in whole" but "expressly permit[s] [the court] to incorporate selected provisions of the agreement." *Rodriguez v. Rodriguez*, 1 Va.App. 87, 90, 334 S.E.2d 595, 597 (1985). Moreover, pursuant to Code § 20–108, the divorce court retains its long recognized "continuing jurisdiction after a final decree of

divorce has been entered, to modify its decree with respect to the ... maintenance of minor children." *Edwards v. Lowry,* 232 Va. 110, 112, 348 S.E.2d 259, 261 (1986). This power to modify child support is not affected by the prior act of affirming, ratifying and incorporating into the divorce decree the parties' child support agreement, or provisions of it. *Id.*

By its express terms, part 5(d) of the parties' agreement in this case obligates the husband to pay the undivided child support "until *each* child dies, marries," or becomes ineligible through one of the cessation of support events specified in the agreement. (Emphasis added). The divorce decree "affirmed, ratified, and incorporated" the parties' agreement and specifically ordered the husband to pay support in accordance with the agreement. The final decree specifically modified part 5(d), however. In particular, after decreeing that the parties' agreement is "affirmed, ratified, and incorporated, but not merged, into this decree, in accordance with the provisions of ... Code § 20–109.1," the final decree provides as follows:

(f) *Child Support.* [The husband] is ordered to pay [the wife] child support in accordance with all the terms, provisions and requirements of their June 27, 1994 Custody, Support and Property Settlement Agreement; and beginning on July 1, 1994, and on the first of every month thereafter, [the husband] shall pay the amount of $2,177.00 per month, as and for child support, to [the wife]. Child support shall continue *until a minor child* dies, marries, becomes emancipated, or reaches the age of eighteen years, whichever occurs first, or until further order of the court; provided, however, that if, at the date of his or her eighteenth birthday, a child: (i) is a full-time high school student, (ii) is not self-supporting, and (iii) is living in the home of the parent seeking or receiving child support, child support shall continue without abatement until the child reaches the age of nineteen years or graduates from high school, whichever first occurs.

(Emphasis added).

Thus, the decree incorporated the terms of the parties' agreement regarding child support, but changed the language

of part 5(d) providing for the event that triggers modification of child support. Instead of requiring the husband to pay the full undivided child support until the last child became ineligible through one of the specified cessation of support events, the final decree provided that the full, undivided child support shall be paid "until *a* minor child" became ineligible through one of the cessation of specified events. (Emphasis added). Thus, the language of the divorce decree modified the terms of the child support agreement and clarified the nature of the father's support obligation. This modification is consistent with the parties' agreement, which contains no indication that the parties intended to provide post-minority support for any child beyond the cessation events specified in part 5(d) of their agreement. In addition, part 5(e) of the agreement, which requires a modification of support upon a change in circumstances, manifests that the parties intended the result accomplished by the final decree's modification. By otherwise incorporating the parties' agreement, the final decree contemplated that the parties would abide by the agreement's "terms, provisions and requirements," except as modified by the final decree.

Significantly, the parties' agreement established the initial amount of child support, which was adopted in the final decree, as "the sum calculated for child support as [is] required by Section 20–108.2 of the Code of Virginia ..., pursuant to the worksheet attached as Attachment A to this agreement." The parties' agreement required the parties to continue using that statutory guide for determining child support. In pertinent part, the agreement provides as follows:

> [5(e) ] If there is any change in circumstances, the parties shall follow the child support guidelines contained in § 20–108.2 of the Code of Virginia or its successor statute and any other relevant Virginia statutes and case law for determination of child support.
> * * * * * * *

7. *MODIFICATIONS IN CHILD SUPPORT PAYMENTS.*

For so long as there is a support obligation under this Agreement, the Husband hereby agrees to furnish the Wife with a photocopy of his signed Federal income tax return and W 2 form(s) (as well as any other reporting of income to other governmental entities not recorded on the Federal income tax return) for future years on or before April 15 of each year commencing with April 15, 1995, so that she may be advised as to the status of his income from year to year. The Wife hereby agrees to furnish the Husband with a photocopy of her signed Federal income tax return and W 2 form(s) (as well as any other reporting of income to other governmental entities not recorded on the Federal income tax return) for future years on or before April 15 of each year commencing with April 15, 1995, so that he may be advised as to the status of her income from year to year.

The evidence proved that the husband paid child support in accordance with the agreement and as directed by the final decree. The husband made the modification in the child support payments contemporaneously with the changed circumstances. The wife makes no claim that the amount of the payments was not in accordance with the schedule in Code § 20–108.2. Thus, no issue of retroactive modification arises. The agreement and the final decree permitted the parties to make these adjustments without returning to court for approval before the change could be made.

In short, courts have the authority to order child support for the minor children of the parties, see Code § 20–107.2, and for children over the age of eighteen under limited circumstances, see Code § 20–124.2(C). The public policy of the Commonwealth clearly encourages parties to seek "agreement ... concerning the conditions of ... the care, custody and maintenance of their minor children." Code § 20–109.1. Indeed, "[w]here the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." Code § 20–109.1. The majority opinion fails to give effect to these policies.

I believe the majority's reliance on *Kelley v. Kelley,* 248 Va. 295, 449 S.E.2d 55 (1994); *Keyser v. Keyser,* 2 Va.App. 459, 345 S.E.2d 12 (1986); and *Solomond v. Ball,* 22 Va.App. 385, 470 S.E.2d 157 (1996), is misplaced. In those cases, the Courts addressed only the support of minor children whose rights a property settlement agreement may not alter. Here, the lowering of child support payments occurred only because of the emancipation of the children and was consistent with the guidelines. If the parties had returned to court on these occasions, the court would not have been able to fix support for the emancipated children because the parties' agreement prohibited such support.

To the extent that the annotation, S.R. Shapiro, *Propriety and Effect of Undivided Award for Support of More than One Person,* 2 A.L.R.3d 596, § 5 (1965 & Supp.2000), bears on this issue, it cites cases for and against the proposition that one party may reduce pro rata an undivided "award" for support after a child becomes ineligible to receive further support. It appears that the only case cited in that annotation which addresses the effect of a separation agreement on the child support obligation is *Hershey v. Hershey,* 57 N.C.App. 692, 292 S.E.2d 141 (1982), which recognizes that " 'where parties to a separation agreement agree concerning the support and maintenance of their minor children, there is a presumption, in the absence of evidence to the contrary, that the provisions mutually agreed upon are just and reasonable, and the court is not warranted in ordering a change in the absence of any evidence of a change in conditions.' " *Id.* at 143 (citation omitted). The court ruled in *Hershey* that the father could not reduce child support payments pro rata because the agreement at issue there, unlike the agreement in this case, did not allow such changes. *Id.*

Although, as the majority notes, "the mother's acquiescence in the reduction is irrelevant," the evidence establishes she was at all times receiving precisely the child support she was entitled to receive pursuant to Code § 20–108.2 and consistent with the agreement. By waiting until the oldest two children were emancipated before filing her petition to hold the hus-

band in contempt, the mother seeks to have the proverbial cake and to eat it too. If she loses this legal gambit, she has received what she was entitled to receive; however, if she wins, she gets an undiluted windfall because the husband's opportunity to seek modification has passed. I believe our decisions require that we hold her to the agreement that was incorporated and ordered in effect by the decree.

In unambiguous language, Code § 20–108.2 provides that "[t]here shall be a rebuttable presumption ... that the amount of the award which would result from the application of the guidelines set forth in this section is the correct amount of child support." I believe that our cases do not bar the parties from agreeing to voluntarily modify their child support payments annually according to Code § 20–108.2, requesting a court to approve such an agreement, and being able to make modifications to the support payments according to their agreement when ordered to do so by the decree, which affirms, ratifies and incorporates by reference that agreement. Yet, it appears from the majority opinion that members of the Bar should be placed on notice that despite good faith efforts to resolve amicably the child support arrangements by agreements that incorporate the schedules of Code § 20–108.2, the parties have no safe harbor and can only protect themselves by filing in court a petition to seek modification for any change in circumstance that has been recognized and specifically identified in their court-approved agreement.

For these reasons, I dissent. I would reverse the judgment, which finds the husband in contempt, and reverse the finding of an arrearage and award of attorney fees.